154 P.2d 231

## RAULIE v. JACKSON–HORNE GROCERY, Limited, et al.

### No. 4824.

Supreme Court of New Mexico.

Nov. 30, 1944.

James A. Hall, of Clovis, for appellant.

Barney T. Burns, of Carlsbad, and Otto Smith, of Clovis, for appellees.

SADLER, Chief Justice.

The plaintiff comes before us as appellant seeking reversal of an adverse judgment in an action against defendants for the recovery of $658.74 claimed to be due him on account of certain fruits and produce purchased at their request in California and delivered to them in Carlsbad, New Mexico, on March 27, 1942. The defendants pleaded payment to plaintiff's authorized agent and prayed that plaintiff take nothing by his complaint.

The facts as found by the trial court and its conclusions of law deduced therefrom are as follows:

"1. That the Plaintiff, a resident of Curry County, New Mexico, was at all times mentioned in the complaint engaged in hauling from and to the State of California agricultural produce and truck, and had been so engaged for about two years prior to the time of the controversy made the basis of this suit against the Defendants; that in such business the Plaintiff owned and operated two large trucks equipped for the hauling of perishable products, such as fruits and vegetables from the States of California and Arizona to his customers in New Mexico and Texas, and operated such trucks with return loads from New Mexico and Texas to Arizona and California.

"2. That the said Jackson-Horne Grocery Ltd., was at the date of the filing of the said Plaintiff's complaint herein, a duly authorized and acting limited partnership, operating several food stores in Eddy, Chaves and Lea Counties, State of New Mexico, and that all of the above named Defendants were, at the date of the filing of the before-mentioned complaint both general partners in said business and also residents of the State of New Mexico.

"3. That some time prior to March 27th, 1942, the said plaintiff entered into an oral agreement with the said Defendants, by and through its Carlsbad agent, the said S. G. Horne, a resident of Carlsbad, New Mexico, who was also a general partner of said Defendant firm, that as a part of the

said oral contract between the Plaintiff and the Defendant the said Plaintiff agreed to purchase certain fruits, vegetables and produce for the said Defendants in Arizona and California, and would deliver such commodities to the Defendants in Roswell or Carlsbad, as required by the Defendants, and said Defendants would, prior to its purchase and delivery, designate the types and amounts of such commodities and the price which said Defendants would be expected to pay said Plaintiff for same; that Plaintiff would purchase said commodities in Arizona and California and pay for same out of his own funds, delivering the said commodities upon order of said Defendants to their Roswell and Carlsbad stores, and upon delivery of such commodities the said Defendants would immediately pay the said Plaintiff for the full amount which said Plaintiff had paid for same, plus an agreed sum for the trucking or hauling of said produce to said Defendants' stores; that the said Plaintiff would derive his only profit from the trucking or hauling charges to be paid by said Defendants, and that said charges were reasonable and that the Plaintiff and Defendants had previously agreed upon such charges for the said hauling.

"4. That on March 27th, 1942, the Plaintiff delivered a truck-load of produce consisting of vegetables and fruits to the Defendants' Carlsbad store at approximately 8 o'clock P. M., being the truck-load about which this controversy arises, by and through his agent, Joe Phillips, the said Joe Phillips furnishing the said Defendants certain copies of invoices covering the items delivered to the said defendants' Carlsbad store, the originals of said invoices being retained by the said Plaintiff's Agent, the said Joe Phillips, and later to be delivered to the said Plaintiff; that after delivery of the said commodities by the said Plaintiff, through his agent Joe Phillips, to the Defendants, the said agent, Joe Phillips, informed the said Defendants that the said Plaintiff had instructed him to collect in full for such upon delivery, and also informed the said Defendants that the said Plaintiff's agent was to use such funds for the purpose of buying and returning a load from El Paso, Texas, to Arizona and California, whereupon the Defendants paid to the said Joe Phillips for said load of commodities the sum of $658.73, said payment being by check to the said Joe Phillips, drawn by Jackson-Horne Grocery, Ltd., Carlsbad, New Mexico, upon funds then on deposit to the credit of said firm in the American Bank, of Carlsbad, New Mexico, dated March 27th, 1942.

"5. That the said Joe Phillips immediately thereafter cashed said check and embezzled said money, and that Plaintiff never received any poartion of the said $658.73.

"6. That prior to the arising of the controversy involved in this action, Plaintiff had purchased and delivered to the Defendants some two or three full loads of fruits and vegetables, and in each instance payment was made by Defendants to Plaintiff by check drawn in favor of Plaintiff, who

was himself present at the time of the deliveries.

"7. That the said agent, Joe Phillips, was not financially interest– with Plaintiff in said contract with the Defendants, and that Plaintiff had not instructed Defendants to make payment to the said Joe Phillips, the Plaintiff being the only one, other than Defendants, interested in the contract for the purchase and delivery of such produce.

"8. That Plaintiff, though being engaged in the trucking business, did not have an established place of business, but operated from his small farm in Curry County, New Mexico; that said Plaintiff did not maintain a regular office, warehouse, or loading docks, as is usually maintained by larger firms engaged in such business; that Plaintiff did not maintain a telephone at his home residence; that he spent a large portion of his time away from his home, spending approximately one-half of his time in the States of California and Arizona, or to and from said States; that while the Plaintiff was away from his Curry County residence he did not maintain any regular office or headquarters in California or Arizona, or elsewhere; that any person or firm seeking to promptly communicate with the said Plaintiff would find it difficult to do so by reason of the foregoing facts; that the said Plaintiff is a 'small trucker'.

"9. That Plaintiff had never instructed the Defendants, either expressly or impliedly, not to pay anyone but himself for the commodities, nor had Plaintiff instructed the Defendants to pay the Plaintiff only for such loads of commodities.

"10. That at the time of the controversy herein there was an established custom of the trade in Curry County, New Mexico and in Carlsbad and Roswell, New Mexico, which the Plaintiff well knew or should have known, to pay the person for such produce who was in charge of and making delivery of such produce.

"11. The Court finds the issues generally in favor of the Defendants.

"Based upon the foregoing Findings of Fact, the Court concludes:—

"1. That the payment by said Defendants to the said Joe Phillips, agent of Plaintiff, by check in the amount of $658.73, was in full payment of all sums due said Plaintiff by the Defendants, and that the payment to the said agent, Joe Phillips, was in fact payment to the Plaintiff.

"2. That Plaintiff is estopped from claiming or collecting any further sum from Defendants.

"3. That judgment herein should be for the Defendants."

Judgment on the findings and conclusions so made was duly entered adjudging that the plaintiff take nothing and dismissing his complaint. The plaintiff prosecutes this appeal for the revision and correction thereof.

■■ We think the judgment of the trial court must be affirmed. Under the oral agreement existing between the par-

ties, as to the terms of which there was no dispute, the goods purchased by the plaintiff for the defendants, consisting of fruits, vegetables and produce, were to be paid for upon delivery. Possibly, in so agreeing the plaintiff intended and contemplated that he should always be present to make delivery in person, as had been the case upon the occasion of the first three deliveries. Hence, he failed to make any provision other than that to be implied from the contract itself, as to what should happen in case the goods were sent for delivery by another. The contract between the parties called for payment upon delivery without specifying the medium of payment. In the absence of an agreement otherwise providing, or the consent of the creditor to receive some other medium, payment may be made only in money. 48 C.J. 595; 40 Am.Jur. 739. This consent, to be sure, may be either express or clearly implied, 40 Am.Jur. 740, § 41, under the topic "Payment". Nevertheless, a mere implied consent on the creditor's part to accept payment by check would not foreclose or deny the debtor the right to pay in cash, if he should so elect.

We have then the case of the plaintiff, a creditor, making delivery to the defendants, the debtors, through an agent, the truck driver, of certain perishable goods, under a contract providing for payment of the invoice price therefor upon delivery, and embezzlement by the agent of the proceeds of a check to his order, which he accepted, tendered in payment by the debtors. Under such circumstances, are the defendants called upon to pay again?

We think not, since in our view the agent had apparent authority to make collection.

If the defendants, relying upon their unquestioned right under the contract so to do, had paid the agent cash upon delivery of the goods, such payment obviously would have operated as payment to his principal and as a discharge of the obligation. Does the fact that payment was by a check to the agent's order, the proceeds of which he promptly converted into cash and embezzled, alter the situation in any way? We think not.

The contract was silent touching the agent's authority to make collection. Indeed, the trial court found: "9. That Plaintiff had never instructed the Defendants, either expressly or impliedly, not to pay anyone but himself for the commodities, nor had Plaintiff instructed the Defendants to pay the Plaintiff only for such loads of commodities."

Accordingly, the agent possessed only such authority to collect on the occasion in question as arose by implication from the terms of the contract. The plaintiff knew, or is to be charged with knowledge, of the terms of his contract. Thus, he knew that payment was to be made upon delivery and could rightfully be in cash. He knew also from his own frequent travelling about, as the trial court found, that it would be difficult, if not impossible, for defendants to communicate promptly with him concerning payment for a shipment of freight whose delivery, owing to its perishable nature, could not be long delayed. With knowledge

that he had not admonished defendants to pay himself only, and not to pay his driver, he reposed confidence enough in the driver to entrust him with his truck and a cargo of valuable freight, with the invoice, for delivery to the defendants nearly half way across the continent under a contract calling for payment upon delivery.

Under the circumstances, possessed as they are under the contract with the right to make payment in cash, we think the defendants were not careless or negligent in accepting the story told them by the agent of instructions by plaintiff to collect cash for the shipment in order to pick up a load of freight at El Paso for transporting to California. In our opinion the rights of the parties on the facts before us are controlled by two well settled doctrines, each of which is quoted and relied upon in the case of Petersen v. Pacific American Fisheries, 108 Wash. 63, 183 P. 79, 80, 8 A.L.R. 198, to-wit:

"A principal is not only bound by the acts of his agent, general or special, within the authority which he has given him, but he is also bound by his agent's acts within the apparent authority which the principal himself knowingly permits his agent to assume, or which he holds the agent out to the public as possessing. Galbraith v. Weber, 58 Wash. 132, 107 P. 1050, 28 L.R.A.,N.S., 341. * * *

"As between two innocent persons, one of whom must suffer, the loss should always fall on the principal who has clothed the agent with apparent authority, and thus enabled him to obtain the advantage of the person with whom he deals, rather than on the purchaser. Galbraith v. Weber, supra."

We think an application of the foregoing principles of law to the rights of the parties in this case establishes the correctness of the trial court's judgment. It follows that it should be affirmed. It is so ordered.

MABRY, BRICE, BICKLEY, and THREET, JJ., concur.