561 P.2d 26

**WESTERN ELECTRIC COMPANY,**
Appellant,

v.

**NEW MEXICO BUREAU OF
REVENUE, Appellee.**

No. 2108.

Court of Appeals of New Mexico.

May 4, 1976.

Jeff Bingaman, Campbell & Bingaman, Santa Fe, for appellant.

Toney Anaya, Atty. Gen., Jan E. Unna, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

HERNANDEZ, Judge.

Taxpayer, Western Electric Company, appeals from a Decision and Order of the Commissioner of Revenue. The order affirmed assessment of a compensating tax on the transportation costs of materials purchased by Mountain States Telephone and Telegraph Company (Mountain Bell) from the taxpayer.

The taxpayer alleges three points of error, the first of which is dispositive of this appeal, to-wit: "The transportation charges here at issue would not be subject to gross receipts tax if they had been incurred in New Mexico and consequently cannot be held subject to the compensating tax." We agree.

Most of the pertinent facts are set forth in the Commissioner's Decision and Order:

"5. The taxpayer sells and Mountain Bell purchases telephone material and apparatus. Such purchases are subject to a blanket contract and related documents, which provide, among other things, that title to purchased property passes to the purchaser at point of shipment; that the taxpayer is to pay freight charges from point of origin to point of destination; and that the taxpayer will bill the purchaser for the freight charges paid by the taxpayer.

"6. All purchases in question here involve shipments of the property from points out of state to Mountain Bell locations located within New Mexico.

"7. All shipments of purchased property involved in this matter are handled substantially as follows: The taxpayer will determine the mode of shipment, viz: common carrier or United States mail; the taxpayer will pay freight charges—i. e., the mail costs or pay the common carrier; the taxpayer will bill Mountain Bell for the property sold; and the taxpayer will separately bill Mountain Bell for the freight charges."

The record also discloses that the price of the materials was f. o. b. the taxpayer's storerooms or factories. Further, the taxpayer normally selected the mode of shipment and the carrier, however, Mountain Bell had the option, as per the agreement, to designate these matters or to transport the materials in its own trucks. Materials purchased from the taxpayer's Phoenix facility were usually transported by an independent contractor with whom Mountain Bell had a ten year contract which terminates on March 1, 1981. Taxpayer billed Mountain Bell separately for all postage and freight charges from statements for materials sold.

Section 72–16A–2, N.M.S.A.1953 (Vol. 10, pt. 2, Supp.1975) provides:

"The purpose of the Gross Receipts and Compensating Tax Act [72–16A–1 to 72–16A–19] is to provide revenue for public purposes by levying a tax on the privilege of engaging in certain activities within New Mexico and to protect New Mexico businessmen from the unfair competition that would otherwise result from the importation into the state of property without payment of a similar tax."

Section 72–16A–4(A), supra, provides: "For the privilege of engaging in business, an excise tax equal to four percent [4%] of gross receipts is imposed on any person engaging in business in New Mexico."

Section 72–16A–7, supra, provides:

"A. For the privilege of using property in New Mexico, there is imposed on the person using property an excise tax equal to four per cent [4%] of the value, at the time of acquisition or of introduction into the state, whichever is later, or of conversion to use by the manufacturer of property that was: * * *. (2) acquired outside this state as the result of a transaction *that would have been subject to the gross receipts tax had it occurred within this state * * *.*" [Emphasis Ours.]

The Commissioner, pursuant to the authority granted him by § 72–13–23, supra, issued G. R. Regulation 3(F):48, *Freight Charges* which provides:

"Transportation costs that are paid by the seller to the carrier are an element of the sales price of the property.

"Transportation costs that are paid to the carrier by the buyer are not an element of the sales price of the property * * *."

The Bureau contends that "under G. R. Regulation 3(F):48 a seller must include transportation expenses in his gross receipts if he pays them and invoices the buyer for them." In support of this contention the Bureau cites *In Re Sales Tax Assessment No. 50030 v. Department of Revenue,* 522 P.2d 149 (S.Ct.Wyo.1974), [hereinafter *Mead*]; *Puna Sugar Company Limited,* Haw., 547 P.2d 2, decided March 8, 1976; *Colonial Pipeline Company v. Clayton,* 275 N.C. 215, 166 S.E.2d 671 (1969). In all of these cases, courts accepted the general proposition that transportation costs form part of the "price" of an item, and therefore a gross receipts tax can be imposed on these costs. The issue here is not, however, whether a gross receipts tax includes these costs; it is rather whether the taxpayer falls within the exemption created by G. R. Regulation 3(F):48. This regulation excludes transportation costs from the sales price of the property when paid to the carrier by the buyer.

■ Thus the issue in this case is the narrow one of determining who paid the transportation costs—the seller or the buyer.

The relationship between the taxpayer and Mountain Bell is shown by the following excerpts from their basic agreement:

ARTICLE I—SCOPE.

"1. *Manufacture and Purchase of Materials.*

The Electric Company [Taxpayer] will manufacture or purchase materials which the Telephone Company [Mountain Bell] may reasonably require for its business and which it may order from the Electric Company; provided, however, that nothing herein contained obligates the Telephone Company to purchase any materials from the Electric Company.

"2. *Delivery of Materials.*

The Electric Company will deliver said materials to the Telephone Company upon its written orders, in such quantities, in such manner, and at such times as the Telephone Company may reasonably designate.

"5. *Distributing Storerooms.*

The Electric Company will maintain distributing storerooms as at present established or at such points as from time to time may be agreed upon, for the distribution of materials to the Telephone Company.

"6. *Stocks of Materials.*

(a) The Electric Company will exercise due diligence in maintaining at all times, at its distributing storerooms, reasonable stocks of materials, except apparatus which must be specially assembled for each job (such as central office switchboards) and other materials which are customarily shipped direct, such as poles and directories.

\*    \*    \*    \*    \*    \*

(b) The Electric Company will carry such special stocks of materials as the Telephone Company may authorize. 'Special stocks' means all stocks authorized by the Telephone Company other than or in excess of reasonable stocks.

"8. *Transportation Charges.*

The Electric Company as authorized by the Telephone Company and in so far as practicable will pay for the account of the Telephone Company such of the following transportation charges as under the Electric Company's prices and terms should be borne by the Telephone Company:

(a) On shipments of materials made hereunder to the Telephone Company.

(b) On shipments of materials returned from the Telephone Company to the Electric Company's distributing storeroom or other points designated by it.

(c) On shipments of Class 'B' returned materials from the Electric Company's distributing storerooms to its reclamation plants or other points of disposition designated by the Electric Company.

The Electric Company will adjust claims with carriers arising out of shipments hereunder.

"9. *Repairs to Materials.*

The Electric Company will maintain repair shops as at present established or at such points as from time to time may be agreed upon and will make such repairs to returned materials as the Telephone Company may reasonably require.

"10. *Other Services.*

The Electric Company will perform such other services as the Telephone Company may reasonably require from time to time."

ARTICLE II—PRICES AND TERMS.

"2. *Materials, Equipment Specification and Installations.*

The prices to be paid by the Telephone Company to the Electric Company for materials, equipment specifications and installations shall be those established from time to time by the Electric Company. *Such prices* in so far as practicable and any conditions affecting them not specifically provided for in this Article *shall be included in the Electric Company's published price lists.* Prices for materials shall include inspection provided for in paragraph 3 Article I of this Agreement. [Emphasis ours.]

"5. *Transportation Charges.*

The Telephone Company will reimburse the Electric Company for transportation charges paid by it as provided for in paragraph 8 Article I of this Agreement.

"8. *Payment.*

As of the first of every month the Electric Company will render monthly statements of account which shall be due and payable by the Telephone Company thirty days after date of such monthly statements. If payment is deferred, the account shall thereafter bear interest at a reasonable rate."

■■ As can be seen, this is more than a sales contract; it is also an agency contract. An agent is defined as a person authorized by another to act on his behalf and under his control. The presence of an agency relationship must be determined from all the facts and circumstances of the case. See *Brown v. Cooley,* 56 N.M. 630, 247 P.2d 868 (1952). One of the aspects of agency present here is that the taxpayer is authorized to pay transportation charges not only on materials sold to Mountain Bell, but on those materials returned by Mountain Bell for credit or repair. This case is to be distinguished from the situation in *Mead* where the relationship of the equipment dealer and his customers was that of buyer and seller, and where the equipment dealer paid the freight charges and included them in the purchase price.

The Bureau concedes that its gross receipts regulations are controlling. G.R. Regulation 3(F):48, supra, specifically excludes from the sales price of the property transportation costs that are paid to the carrier by the buyer. The taxpayer argues, and we agree, that the buyer is in fact paying the transportation costs in this instance since Mountain Bell reimburses Western Electric for transportation costs.

Had the sale of these materials from the taxpayer to Mountain Bell taken place in New Mexico, this situation would clearly have come within the ambit of G.R. Regulation 8:2 and the gross receipts tax could not be levied on the freight charges; *a priori,* neither could the compensating tax. It is evident from the language of § 72–16A–2, supra, that the legislature intended to make our gross receipts tax and our compensating tax correlates: an exemption from the gross receipts tax must also be treated as an exemption from the compensating tax.

The Commissioner was in error in his decision and order for the reasons stated above and consequently the assessment is annulled.

IT IS SO ORDERED.

LOPEZ, J., concurs.

SUTIN, J., specially concurs.

SUTIN, Judge (specially concurring).

I concur in the result.

A. *Western Electric is not subject to the Gross Receipts Tax Act.*

The Commissioner decided that Western Electric, from out of state, sold property to Mountain Bell for use in this state. When this sale occurred, Western Electric was not liable for the gross receipts tax. Therefore, it had a duty to collect the compensating tax from Mountain Bell and pay over the tax collected to the Bureau. Western Electric paid the compensating tax on the purchase price of the property sold, but it did not pay the compensating tax on the freight charges, which freight charges were a part of the purchase price of the property sold. Western Electric paid the freight charges f. o. b., and billed Mountain Bell separately for the freight charged.

The Commissioner ordered Western Electric to pay the compensating tax on the freight charges which would have been due and owing from Mountain Bell as a compensating tax or due and owing from Western Electric as a gross receipts tax. I disagree.

An analysis of the Gross Receipts Tax Act convinces me that Western Electric is not subject to any tax. The two sections of the Act with which we are involved are §§ 72–16A–7(A), and 72–16A–10(A), N.M.S. A.1953 (Repl.Vol. 10, pt. 2, 1973 Supp.).

(1) *Section 72–16A–7(A) is a compensating tax and not applicable to Western Electric.*

Section 72–16A–7(A) is a compensating tax imposed for the privilege of using prop-

erty in New Mexico. The tax is imposed in two ways:

(1) "* * * on the person using property". Under this phrase, anyone who merely uses property in New Mexico cannot be subject to any tax. This phrase has meaning when read in connection with § 72–16A–10(A), infra.

(2) * * * *or of conversion to use by the manufacturer of property that was:*

    (1) manufactured by the person using the property in the state;

    (2) acquired outside this state as the result of a transaction that would have been subject to the gross receipts tax had it occurred within the state; or

    (3) acquired as the result of a transaction which was not initially subject to the compensating tax imposed by subsection A(2) of this section or the gross receipts tax but which transaction, because of the buyer's subsequent use of the property, should have been subject to the compensating tax imposed by subsection A(2) of this section or the gross receipts tax. (Emphasis added.)

What is meant by the phrase: "conversion to use by the manufacturer of property"? Its meaning is doubtful. "* * * [A]ll doubts as to the meaning and intent of a tax statute must be construed in favor of the taxpayer." *Field Enterprises Ed. Corp. v. Commissioner of Rev.,* 82 N.M. 24, 28, 474 P.2d 510, 514 (Ct.App.1970). To me, the words "conversion to use" means that after a product is manufactured and sold to a purchaser, and the purchaser uses the manufactured product, the manufacturer has converted this property to use. It has changed the function of the product from its original manufactured state to one of use.

Western Electric is the manufacturer. Western Electric must fall within one of the categories to be subject to a compensating tax. *First,* Western Electric did not manufacture property in New Mexico and then convert it to use. *Second,* Western

Electric did not acquire property outside of this state, property that would have been subject to the gross receipts tax if the transaction had occurred in this state. *Third,* Mountain Bell's subsequent use of the property purchased from Western Electric could not be subject to tax unless Western Electric carried on an activity in this state to exploit New Mexico's markets as set forth in § 72–16A–10(A), supra.

Western Electric does not fall within the *first* and *second* categories. On the third category, the test is the applicability of § 72–16A–10(A).

(2) *Section 72–16A–10(A) is not applicable to Western Electric.*

Section 72–16A–10(A) provides:

Every person carrying on or causing to be carried on *any activity within this state attempting to exploit New Mexico's markets,* who sells property or sells property and service for use in this state and who is not subject to the gross receipts tax on receipts from these sales shall collect *the compensating tax* from the buyer and pay over the tax collected to the bureau. (Emphasis added.)

The word "activity" is defined. The relationship between Western Electric and Mountain Bell is contractual in nature. Although Western Electric is authorized to do business in New Mexico, the record does not disclose any activity in this state, nor does it show that Western Electric attempts to exploit New Mexico's markets. Although its sales to Mountain Bell are not subject to the gross receipts tax, Mountain Bell is not subject to a compensating tax. Therefore, Western Electric has no duty to collect a compensating tax.

Western Electric is not subject to taxation in this case.

B. *The Administrative Hearing was not fair and impartial.*

A review of the record discloses that the Commissioner admitted in evidence Bureau's Exhibit 3. This exhibit includes a letter from the Executive Secretary of the

Board of Tax Appeals of the State of Washington to the New Mexico legal division of the Bureau of Revenue. This letter enclosed: (1) A certified true copy of a final decision of the Board of Tax Appeals in the case of *Western Electric Company, Inc. v. State of Washington Department of Revenue* dated January 17, 1974. (2) A Stipulation of Facts. (3) A Supplemental Stipulation of Facts. (4) Eight exhibits. (5) A Determination of the Department of Revenue of the State of Washington "In the Matter of the Petition for Correction of Assessment of Western Electric Company, Inc." (6) A Standard Supply contract dated July 1, 1961 between Western Electric Company and Pacific Northwest Bell Telephone Company. (7) A Western Electric Company document called "Preface" which was a General Supplies Price List.

This exhibit covered 59 pages of the transcript. The Washington Opinion involved the applicability of Retail Sales Tax and Business and Occupation Tax by the State of Washington on transportation charges.

The Commissioner's attorney argued for admission that "the Western Electric Company raised the very same issues that they are raising in this protest in that matter and the Board of Tax Appeals ruled against them on that matter."

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Section 20–4–401, N.M.S.A. 1953 (Repl.Vol. 4, 1975 Supp.).

Bureau's Exhibit 3 was not admissible. The Commissioner had a right to rely on this exhibit to arrive at his decision and order. It is not important to determine whether he did or did not. It is subject to inference that the Commissioner would rely on the evidence of his own attorney; that in case of doubt, he would favor the state and not the taxpayer, and that he would not be objective in nature. Every taxpayer is entitled to a fair and impartial hearing. Western Electric was denied one in this case.

The decision and order of the Commissioner was not in accordance with law.