SMITH MACHINERY COMPANY, INC., Plaintiff-Appellee,

v.

Bob JENKINS, Defendant-Appellant.

No. 79–1270.

United States Court of Appeals, Tenth Circuit.

Argued Nov. 20, 1980.

Decided July 17, 1981.

Steven L. Tucker of Jones, Gallegos, Snead & Wertheim, Santa Fe, N. M., for defendant-appellant.

Charles H. Coll of Sanders, Bruin & Baldock, Roswell, N. M., for plaintiff-appellee.

Before McWILLIAMS and LOGAN, Circuit Judges, and PALMIERI, District Judge [*].

LOGAN, Circuit Judge.

Bob Jenkins appeals from a directed verdict finding him in default on a promissory note and awarding Smith Machinery Company, Inc. $29,100.00 in principal and $3,762.79 in interest plus attorneys' fees as provided in the note.[1] The issues on appeal are whether the district court erred in refusing to disallow all interest on the note as usurious and whether it erred in directing a verdict for Smith Machinery on the evidence and offers of proof presented.

In 1976, Jenkins, a farmer, purchased a combine from Smith Machinery, making a cash downpayment and giving a promissory note to the company for $29,100.00, the balance of the purchase price. At the same time he entered a security agreement, granting Smith Machinery a security interest in the combine purchased. Payment was promised in two equal installments scheduled for June 15, 1977, and June 15, 1978. The note bore interest rates of 10% until maturity and of 12% after maturity. It also provided for attorneys' fees in the amount of 15% of the principal and interest in the event an attorney was employed for collection.

---

[*] Honorable Edmund L. Palmieri of the United States District Court for the Southern District of New York, sitting by designation.

1. The suit is in federal court on the basis of diversity of citizenship after removal by the defendant from the state court in which it was first filed.

Jenkins failed to make the first payment. On January 5, 1978, Smith Machinery sued Jenkins, seeking judgment on the note, a court order authorizing the company to take possession of the combine securing the note in order to sell it to satisfy the judgment, and a judgment for money owed by Jenkins on an open account with Smith Machinery.[2] Offers of judgment tendering all of Jenkins' right to the combine to Smith Machinery made during and between pretrial hearings were either rejected or not responded to by Smith Machinery. Shortly before the trial Jenkins placed the combine on a common carrier in Athens, Texas, consigned to the order of Smith Machinery in Roswell, New Mexico; while en route, the night before the trial was to begin, Jenkins delivered a bill of lading for the combine to the home of a Smith Machinery salesman who had sold him the combine. The salesman testified he did not see the document until the morning of the trial. At trial the judge accepted testimony relating to the combine only for the purpose of showing consideration for the note. He reduced the postmaturity rate of interest on the note to 10% and, at the conclusion of the presentation of evidence relating to Smith Machinery's claims, directed a verdict in favor of Smith Machinery.

Jenkins appeals the district court's allowance of interest on the loan on the ground that the postmaturity interest rate is usurious and that N.M.Stat.Ann. § 50–6–18 (1953) requires a forfeiture of the entire amount of interest charged on the note. He appeals the court's directed verdict, arguing that sufficient evidence had been presented to require submission of the defense of payment to the jury. We affirm the decision on the appealed issues, although our reasoning differs from that of the district court.

## I

Jenkins argues that under New Mexico law all interest provided for in the promissory note to Smith Machinery must be forfeited because the interest on the note is usurious. We must look to the wording of the usury law to determine whether postmaturity interest rates are governed by the limits set by the statute.

N.M.Stat.Ann. § 50–6–16 (1953), in effect at the time the promissory note was executed, provided in pertinent part as follows:

"*Rates of Interest Allowed—Minimum Charge.*—The interest rate shall be the rate agreed to by the parties, except that [it] ... shall not exceed ten percent (10%) per annum computed upon unpaid balances for the actual elapsed time during which such balances ... are unpaid where the evidence of indebtedness is secured by collateral security ...."

The penalty statute for usury at that time, N.M.Stat.Ann. § 50–6–18, provided:

"*Penalties and Forfeitures.*—The taking, receiving, reserving or charging a rate of interest greater than that allowed by this act [50–6–15 to 50–6–19], when knowingly done, shall be deemed a forfeiture of the *entire amount* of such interest which the note, bill, or other evidence of debt carries with it or which has been agreed to be paid thereon...."

(Emphasis added.)

Jenkins' position is that the interest rate of 12% on this secured note made the note usurious on its face and, thus, the penalty provision requires a forfeiture of the *entire* interest on the note. Jenkins relies upon the reference in N.M.Stat.Ann. § 50–6–16 to "unpaid balances for the actual elapsed time during which such balances ... are unpaid" as requiring inclusion of the postmaturity period. Smith Machinery contends, *inter alia*, that postmaturity interest rates are not covered by the New Mexico usury statutes and, thus, cannot be usurious. We agree with Jenkins' contention that if postmaturity rates are covered by the usury laws of New Mexico, N.M.Stat. Ann. § 50–6–18 requires forfeiture of all interest on the note, and does not simply

**2.** Jenkins does not appeal from the judgment entered against him on the open account.

require reduction of the postmaturity interest to 10%.[3]

In the absence of language in the usury statutes that compels a different conclusion, the courts have generally held the limitations on interest rates charged do not apply to postmaturity charges. *See generally,* Annot., 28 A.L.R.3d 449, 452 (1969); 91 C.J.S. *Usury* § 31, at 608–611 (1955). The rationale is that because postmaturity charges are within the debtor's control they are penalties for nonpayment rather than charges for the use of money and, therefore, they are not affected by usury laws. *See In re Tastyeast, Inc.,* 126 F.2d 879, 882 (3d Cir.), *cert. denied,* 316 U.S. 696, 62 S.Ct. 1291, 86 L.Ed. 1766 (1942); *Scientific Products v. Cyto Medical Lab., Inc.,* 457 F.Supp. 1373, 1379 (D.Conn.1978); *see also Abbot v. Stevens,* 133 Cal.App.2d 242, 284 P.2d 159 (1955) (prepayment penalty not usurious because contingency creating excessive rate is under the control of the debtor). Such charges may be deemed usurious, however, when state laws limit interest rates which can be applied on the "detention" as well as the use of money. *See Ulviden v. Sorhen,* 58 S.D. 444, 237 N.W. 565 (1931).

N.M.Stat.Ann. § 56–8–9 A (1978) indicates the scope of coverage of the usury limits of the New Mexico provisions cited above.

> "[N]o person, corporation or association, directly or indirectly, shall take, reserve, receive or charge any interest, discount or other advantage for the loan of money or credit or the forbearance or postponement of the right to receive money or credit except at the rates permitted in Sections 56–8–1 through 56–8–21 NMSA 1978."[4]

All the terms of the statute denote consensual agreements between the parties, indicating that a withholding or detention by the borrower not consented to by the lender is not within the statute's purview. The mere fact that the parties have agreed to the rate to be paid after the debt is due does not make an arrangement a forbearance. In the instant case there was no agreement that Jenkins could defer payment after maturity; the situation was a "detention" of money rather than a "forbearance" and, as such, we do not think the New Mexico courts would hold it is covered by the statute. *See Ferguson v. Electric Power Bd.,* 378 F.Supp. 787 (E.D.Tenn. 1974), *aff'd* 511 F.2d 1403 (6th Cir. 1975) (charge imposed because of late payment is within meaning of statute only when it is consideration for creditor's forbearance). Thus, the contract was not usurious under the New Mexico statutory scheme and the forfeiture provision does not apply.

We are not persuaded by Jenkins' argument that the wording of N.M.Stat.Ann. § 50–6–16 "actual elapsed time," must include postmaturity detention of money. He points to a 1977 amendment changing the wording in that section to "actual contract time"[5] to bolster his argument that the language in effect at the time of this transaction included interest rates both before and after maturity. We do not agree that the rewording necessarily indicates that the earlier version covered postmaturity interest. The change can be reasonably construed as a clarification of the original intent of the legislature. In our view, the entire phrase "actual elapsed time during which such balances ... are unpaid," read as a whole, points only to the computation of the rate rather than coverage of pre- and postmaturity rates. In cases of payment before maturity, for example, computation would be permitted only on the time which has elapsed.

## II

Jenkins' second contention of error is that the court should not have directed a verdict

---

3. Smith Machinery did not appeal the district court's ruling reducing the interest chargeable after maturity. Consequently, we do not disturb that ruling.

4. This provision replaced N.M.Stat.Ann. § 50–6-15 in effect at the time of the making of the note. The relevant language was not changed by the 1977 amendment.

5. *See* N.M.Stat.Ann. § 56–8–11 (1978).

for Smith Machinery because Jenkins had paid the debt by tendering back the combine. He argues that the evidence showing he delivered a negotiable bill of lading consigning the combine to the order of Smith Machinery to John Needham, the salesman who sold him the combine, was sufficient to require a jury determination on that defense.

The standard to be applied in determining whether to grant a motion for directed verdict is not whether there is literally no evidence to support the party opposing the motion, but whether there is evidence upon which the jury could properly find a verdict for that party. *Yazzie v. Sullivent*, 561 F.2d 183, 188 (10th Cir. 1977); 9 Wright and Miller, *Federal Practice and Procedure*, p. 543 (1971). The court may not weigh the evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury. Rather, it views the evidence most favorably to the party against whom the motion is made and gives that party the benefit of all reasonable inferences from the evidence. *Yazzie*, at 188. This standard is the same in both the trial court and on appeal. *Swearngin v. Sears Roebuck & Co.*, 376 F.2d 637, 639 (10th Cir. 1967).

The precise question for our review is whether a jury, presented with the evidence admitted or contained in Jenkins' offers of proof, drawing all reasonable inferences in his favor, could properly have found for Jenkins.

The evidence is slightly obfuscated by the court's limitation on evidence concerning the combine to a showing of consideration for the note. Nevertheless, the court indicated that a debt may be paid with property rather than money if the creditor consented to such an arrangement. Smith Machinery's consent here is the key. New Mexico courts recognize that payment of a debt may be made only in money unless the creditor consents to some other form of payment. *Raulie v. Jackson-Horne Grocery*, 48 N.M. 556, 154 P.2d 231 (1944); *Phillips v. Gooch*, 28 N.M. 448, 214 P. 582 (1923). In *Raulie*, the court held that the

creditor's consent to receive payment in some form other than money may be express or implied from the circumstances.

Jenkins offered the combine in settlement more than once during the pretrial and was rejected. His hopes to get to the jury rest upon the delivery of the bill of lading to the home of John Needham, Smith Machinery's salesman, the night before trial. Even if Needham might be considered an agent with authority to make a compromise settlement, it would be preposterous to find that a settlement was made on the basis of the facts presented here. Jenkins had placed the combine with a common carrier in Athens, Texas, without consultation with Smith Machinery or its representative. The combine had not been inspected nor received by a Smith Machinery representative at the time of trial. The bill of lading had been delivered to Needham's house on Sunday night; trial was to commence the next morning. Needham's testimony was that he did not see the bill of lading until the morning of the trial. The evidence presented to the court was not sufficient to warrant submitting the issue to the jury. Mere acceptance or receipt of the bill of lading by Needham is insufficient to support an inference that it was accepted by Smith Machinery in payment of the debt. *See Lindberg v. Ferguson Trucking Co.*, 74 N.M. 246, 392 P.2d 586, 589 (1964) (mere acceptance by a creditor of an assignment does not constitute a payment in the absence of an agreement or proof of the creditor's intention to receive the assignment as payment).

AFFIRMED.