697 P.2d 482

Max OTERO, Plaintiff-Appellee,
Plaintiff-Appellant,

v.

Raymond L. ZOUHAR,
Defendant-Appellant,

and

Albuquerque Anesthesia Services, Ltd.,
and Louise Layne,
Defendants-Appellees.

No. 15457.

Supreme Court of New Mexico.

Feb. 28, 1985.

Rehearing Denied April 1, 1985.

Douglas G. Voegler, Marchiondo & Berry, P.A., Albuquerque, for plaintiff-appellee.

William G. Wardle, Bruce D. Black, Campbell, Byrd & Black, P.A., Santa Fe, for defendant-appellant.

## OPINION

WALTERS, Justice.

We granted plaintiff's petition for certiorari to the Court of Appeals to review the interaction of case law, the New Mexico Rules of Civil Procedure, and the Medical

Malpractice Act, NMSA 1978, §§ 41–5–1 through 41–5–28 (Repl.Pamp.1982). The details of this case are set forth in the opinion of the Court of Appeals.

Health care providers licensed to practice in New Mexico are separated by the Medical Malpractice Act into two classes, "qualified" and "non-qualified." To be classified as "qualified," a health care provider must establish financial responsibility by filing proof of $100,000 in insurance coverage or by depositing that amount with the state superintendent of insurance. § 41–5–5.

Medical malpractice suits are subject to a three-year statute of limitations; the statute begins to run on the date of the act of malpractice. § 41–5–13. The Act specifies, however, that "[n]o malpractice action may be filed in any court against a qualifying health care provider before application is made to the medical review commission and its decision is rendered." § 41–5–15(A). Submission of an application to the medical review commission tolls the statute of limitations, as to that particular "qualified" defendant, until 30 days after the commission has entered its decision, § 41–5–22, but it has no effect on tolling the statute of limitations applicable to any "non-qualified" health provider co-defendant.

Of the three defendants named in this suit, there was no dispute that one, Dr. Zouhar, was and is a qualified health provider. The remaining two are also qualified, although Otero was advised at the time he filed suit that they were not.

Four days before the three-year limitation would have run, plaintiff filed a complaint in district court, naming both the qualified and presumably nonqualified defendants. Three days later he mailed an application for review by the commission of his claim against the qualified provider and, shortly thereafter, moved the district court to stay proceedings until the commission had acted on that claim.

We discuss the procedural morass involving the three defendants separately.

## A. Defendant Zouhar

Defendant Zouhar is a qualified health care provider as to whom the Act requires plaintiff to submit an application for review to the medical review commission. On the last day before the running of the statute of limitations, plaintiff mailed an application which apparently was received by the commission three days after the statute had run. Defendant argues that the application was not "submitted" until it was received and, as receipt occurred after the limitations period had expired, he asserts that plaintiff's claim was barred. Plaintiff, on the other hand, contends that his act of mailing constituted "submission."

The Act is silent regarding the procedure required to "submit" an application. § 41–5–14(D). However, by using the term "submit" rather than "file," we can infer that the requirements of filing a suit in the district court are not the requirements for submitting an application to the review commission.

In *Saiz v. Barham,* 100 N.M. 596, 673 P.2d 1329 (Ct.App.), *cert. denied,* 100 N.M. 689, 675 P.2d 421 (1983), the Court of Appeals held that the medical review commission's act of mailing its decision to the plaintiff triggered the commencement of the thirty-day period after which the statute of limitations begins to run again, even though plaintiff had not received the decision until ten days after it had been mailed by the commission.

▆▆▆ In the instant case, we think it significant that even though the commission maintains an office at which applications may be submitted in person, because there is only one office for the entire state, plaintiffs are encouraged to use the mails. It seems reasonable, therefore, to apply to a plaintiff the same rule that has been applied to the commission—that the act of placing either an application, or a decision, in the mail constitutes the triggering event. *Saiz.* We thus hold that the date of mailing the application constitutes submission. Consequently, the application was timely made.

Defendant Zouhar's second argument is that the trial court erroneously refused dismissal of the suit against him, in that the complaint was filed in district court three days before the application was submitted to the medical review commission and, of course, before the commission procedures had been completed. Section 41–5–15(A) of the Act prohibits the filing of a complaint until after the commission has made its decision.

Recognizing the requirement to join necessary and indispensable parties in a single suit or risk dismissal if they could not later be joined, NMSA 1978, Civ.P.R. 19 (Repl. Pamp.1980), and having been informed by the superintendent of insurance that two defendants were not qualified health providers, plaintiff filed his suit joining all defendants in order to observe the joinder requirement and to preserve his cause of action against the non-qualified parties before the statute ran.

Relying on *Perez v. Brubaker*, 99 N.M. 529, 660 P.2d 619 (Ct.App.1983), defendant Zouhar contends that the statutory commission review is a jurisdictional prerequisite to filing suit in the district court. In *Perez*, the trial court granted defendant's motion for summary judgment when plaintiff filed his complaint before applying to the commission, dismissing the suit with prejudice. The Court of Appeals reversed the dismissal with prejudice, holding that the district court "only had authority to determine if it had the power to act on the merits." *Id.* at 531, 660 P.2d at 621.

Upon the authority of *Perez*, defendant Zouhar is correct, and he was entitled to dismissal of the suit *without prejudice*. The submission of plaintiff's application to the commission before the statute expired would then have tolled the limitation period until after the commission had rendered its decision several months later, and suit then could have been re-filed within 30 days following the decision.

Nonetheless, although according to *Perez* the district court should have granted dismissal without prejudice on defendant Zouhar's motion, its order granting a stay of proceedings on the complaint that was filed prior to the time the commission had considered the matter acted to allow review and also to preserve the complaint and to obviate the necessity of plaintiff's refiling the complaint or obtaining an order to reinstate it within 30 days following the commission's decision. Were we now to require dismissal of the complaint, long past the 30 days within which a new complaint could have been filed, we would be holding the plaintiff responsible for the trial court's error and denying plaintiff the opportunity to make a timely filing after the commission had acted. We see no justice in strictly applying the Act now to void the complaint filed and thus circumvent the tolling provision of the Act that would have applied to save plaintiff's cause of action if the trial court's ruling and the time consumed in appellate proceedings had not intervened. Such "Catch-22's" are procedural anomalies that do not deserve perpetuation. *Cf. Swallows v. City of Albuquerque*, 61 N.M. 265, 298 P.2d 945 (1956) (period during pendency of appeal of suit ultimately determined on appeal to have been prematurely filed held not to toll statute of limitations). Plaintiffs should not be denied their day in court because of incorrect rulings and attendant delays incurred by appellate procedures.

In *Jiron v. Mahlab*, 99 N.M. 425, 659 P.2d 311 (1983), this Court approved plaintiff's filing his complaint in the district court before applying for review by the medical review commission. Because unbending adherence to the timing requirements of the Act would likely have eliminated plaintiff's right of action there, we held that such strict application of the Act would unconstitutionally infringe on plaintiff's right of access to the courts.

Similarly in this case, because of a mistaken ruling by the trial court and an appellate decision rendered long after timely refiling would have been possible, we hold that, as in *Jiron*, strict adherence to the procedures required by the Act, without regard to the circumstances creating the procedural bind within which plaintiff now

finds himself as a result of the appellate process, would improperly elevate procedural considerations over plaintiff's constitutional right to petition for redress of grievance. Particularly is this true when the reason for the preliminary screening has been fulfilled. "[W]hen a statute or rule operates to deprive an individual of a protected right, it may be held constitutionally invalid as applied to that individual." *Jiron*, 99 N.M. at 426, 659 P.2d at 312.

▮ Additionally, we once again affirm our exclusive constitutional power under N.M. Const. art. III, § 1 and art. VI, § 3 to regulate all pleading, practice and procedure affecting the judicial branch of government. *State v. McBride*, 88 N.M. 244, 539 P.2d 1006 (1975). Clearly, the district courts have jurisdiction to hear tort actions and to grant relief. N.M. Const. art. VI, § 13; NMSA 1978, § 37-1-7. The statutory provision that claimants against health care providers first submit their claims to the commission before filing suit is a purely procedural requirement and cannot, therefore, be deemed binding. *See Ammerman v. Hubbard Broadcasting, Inc.*, 89 N.M. 307, 551 P.2d 1354 (1976); *McBride*, 88 N.M. at 247, 539 P.2d at 1009.

▮ Consequently, with respect to defendant Zouhar the procedural provisions of the Medical Malpractice Act, to the extent of denying plaintiff access to the courts, shall not control. Zouhar has not been prejudiced; action was stayed while the complaint against him was reviewed by the medical commission and he is in no worse position then he would have been in had the complaint been filed after the commission acted. By staying proceedings pending the commission's decision, the paramount intent of the statute (in addition to making liability insurance available to health care providers), *i.e.*, to prevent filing of non-meritorious malpractice lawsuits (*see Kovnat*, Medical Malpractice Legislation, 7 N.M.L.R. 5, 31 (1976–77)), was served in this case regardless of the premature filing of the complaint. *See Vaughn v. United Nuclear Corp.*, 98 N.M. 481, 485, 487, 650 P.2d 3, 7, 9 (Ct.App.1982), and cases therein cited. The Court of Appeals is reversed with respect to plaintiff's claim made against defendant Zouhar.

## B. Defendants Albuquerque Anesthesia Services, Ltd. and Louise Layne

Shortly before plaintiff's complaint was filed and in response to an inquiry made of the state superintendent of insurance, plaintiff was informed that neither Albuquerque Anesthesia Services, Ltd. (Anesthesia Services) nor Louise Layne were qualified health care providers. As it turned out, the records of the superintendent's office were incomplete and in disorder and both defendants were, indeed, qualified health care providers. Consequently, an application for review of plaintiff's claim against those defendants was not filed before the statute of limitations ran, but was filed with the commission as soon as it was shown that plaintiff had received incorrect information from the superintendent of insurance.

The Court of Appeals held that plaintiff had an obligation to seek information elsewhere regarding the status of those defendants, and that misinformation supplied by the office of the state superintendent of insurance would not excuse plaintiff's failure to file his claim with the commission before filing his complaint in district court.

▮ The Act imposes upon a health care provider the obligation to submit specified proof of financial responsibility to the state superintendent of insurance, upon the doing of which that person or entity becomes a "qualified" provider to whom the screening provisions of the Act apply. § 41–5–5. That is the only reference in the Act to the manner of establishing whether a plaintiff must obtain commission review before filing his claim for trial in the district court. The provision clearly, in our view, creates in the superintendent of insurance some requirement to maintain a list of those whose qualified status affects suits against them, and it names the ultimate and only source from which injured claimants should be able to obtain the in-

formation that would govern whether or not their claims must first be submitted to the medical review panel. If this provision were not so viewed, then injured medical malpractice claimants would be deprived of their constitutional right to *notice*, under the equal protection and due process clause, of identifiable health care providers against whom claims would be treated differently than they would be if made against other providers. *See Bokum Resources Corp. v. New Mexico Water Quality Control Comm.*, 93 N.M. 546, 603 P.2d 285 (1979); *State v. Mead*, 100 N.M. 27, 665 P.2d 289 (Ct.App.1983). Contrary to the holding of the Court of Appeals that plaintiff's reliance on information supplied by the superintendent of insurance does not constitute excuse for non-compliance with the screening procedures of the Act, we believe that the rationale for excuse set forth in *Hayes v. Hagemeier*, 75 N.M. 70, 400 P.2d 945 (1963) (referred to by the Court of Appeals), was satisfied: Plaintiff, by inquiring of the entity named by the statute whether defendants Anesthesia Services and Layne were qualified providers, "did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law." *Id.* at 76, 400 P.2d 949 (quoting *Alarid v. Vanier*, 50 Cal.2d 617, 624, 327 P.2d 897, 900 (1958)).

 Contending that plaintiff's justification of "excuse" is really a claim of "estoppel," defendants argue that they cannot be bound by the representations of a third party—the superintendent of insurance. What is overlooked is the principal-agent relationship essentially created by the statutory requirement that certain providers deposit insurance funds or a policy with the superintendent of insurance to assure themselves of the special protection of a preliminary hearing, thereby accepting the superintendent as their agent for the limited purpose of providing notice of their conversion to the qualified status. It is immaterial that the agency relationship is implicit rather than express; to the extent that a third party deals with an agent (the superintendent of insurance), the agent's scope of authority includes that which has apparently been delegated to him. 3 Am. Jur.2d, *Agency*, § 73, at 475 (1962). The legislature delegated the office of the superintendent as the agency through which health care providers would record their entitlement to the benefits of the Medical Malpractice Act. When the superintendent acted to provide information on behalf of and for the benefit of the health care providers, he was acting as the statutorily-named agent of the providers, notwithstanding that he was not so called. *Chevron Oil Co. v. Sutton*, 85 N.M. 679, 515 P.2d 1283 (1973).

 Even though the misinformation was supplied by the superintendent's office and not by the defendants themselves, as between innocent parties, one of whom must suffer some loss, the loss must fall upon the one whose agent created the climate for the loss. *See Raulie v. Jackson-Horne Grocery*, 48 N.M. 556, 154 P.2d 231 (1944).

 Plaintiff was entitled to rely on the representations of the superintendent. Consequently, reinstatement of plaintiff's claims against defendants Anesthesia Services and Layne should be made—because those claims also have been reviewed by the medical panel—for the same reasons that we have applied to the claim against Zouhar.

We reverse the decisions of the trial court and Court of Appeals to the extent necessary to permit the claims against Zouhar, Layne and Albuquerque Anesthesia Services, Ltd., to proceed to trial. We affirm the Court of Appeals on plaintiff's standing to raise other constitutional issues in this appeal.

IT IS SO ORDERED.

SOSA, Senior Justice, and LOUIS E. De-PAULI, District Judge, concur.

RIORDAN, J., specially concurs in the result.

STOWERS, J., dissents.

STOWERS, Justice, dissenting.

I dissent.

NMSA 1978, Sections 41–5–14(D) and –15(A) (Repl.Pamp.1982), establish the mandatory requirement that a medical malpractice case must be submitted to and reviewed by a panel provided by the medical review commission prior to filing the case in any court. The language of the statute is plain, clear and unambiguous, and must be given effect. *Keller v. City of Albuquerque*, 85 N.M. 134, 509 P.2d 1329 (1973). The plain meaning of the statute cannot be ignored to avoid a harsh result. *See Noriega v. City of Albuquerque*, 86 N.M. 294, 523 P.2d 29 (Ct.App.), *cert. denied*, 86 N.M. 281, 523 P.2d 16 (1974).

The majority opinion circumvents the plain meaning and effect of Sections 41–5–14(D) and –15(A). If the intent of the opinion is to nullify these statutory sections, then it should say so and allow the Legislature to remedy the problem with appropriate legislative action. It is not the duty of this Court to substitute its judgment for that of the Legislature. *Village of Deming v. Hosdreg Co.*, 62 N.M. 18, 303 P.2d 920 (1956).

In *Jiron v. Mahlab*, 99 N.M. 425, 659 P.2d 311 (1983), this Court approved an exception to the requirement of Section 41–5–15(A), based on the constitutional grounds of right of access to the courts, where the plaintiff would be prejudiced by the court's inability to acquire personal jurisdiction over the defendant because the defendant was leaving the State. This Court's decision in *Jiron* was based on circumstances beyond the plaintiff's control; such circumstances do not exist in this case. There is no basis for the opinion's nullification of the statutory requirement.

Moreover, there is no foundation for the opinion's establishment of a principal-agent relationship between the superintendent of insurance (superintendent) and health care providers. To the extent that the superintendent is an agent, he is an agent whose principal is the Legislature, and whose power is delegated by the Legislature. *See*

*Ledgering v. State*, 63 Wash.2d 94, 385 P.2d 522 (1963). "An agent is defined as a person authorized by another to act on his behalf and under his control." *Western Electric Co. v. New Mexico Bureau of Revenue*, 90 N.M. 164, 167, 561 P.2d 26, 29 (Ct.App.1976). In this case, there are no facts or circumstances indicating that the health care providers or the Legislature authorized the superintendent to act on the behalf of or under the control of the health care providers. *See Id.* The superintendent is not an agent under Sections 41–5–14(D) and –15(A), and his authority and duty under those sections is not derived from or limited by such an agency relationship.

The superintendent is a public officer. The authority and duties of public officers are bestowed and defined by the Legislature and the New Mexico Constitution. *See Pollack v. Montoya*, 55 N.M. 390, 234 P.2d 336 (1951). Contrary to the opinion, Section 41–5–5 does not create a requirement that the superintendent maintain a list of qualified health care providers for the purpose of notice to a plaintiff of the qualified status of a health care provider. That section only requires the superintendent to accept proof of qualification and payment of surcharge from a health care provider seeking qualified status. Further, Sections 41–5–14(F) and –25 state that the superintendent's authority and duty under the Medical Malpractice Act, NMSA 1978, Sections 41–5–1 to –28 (Repl.Pamp.1982), is that of custodian of the patient's compensation fund. As such, the opinion's inferred agency duty to maintain a list of qualified health care providers is not logical or properly drawn. "There is no apparent authority in a public officer whose duties are prescribed by law as there would be in the case of an agent for a private party." *Baker v. Deschutes County*, 10 Or.App. 236, 240, 498 P.2d 803, 805 (1972) (citations omitted). Persons dealing with public officers are bound, at their peril, to know the extent and limits of the officer's power, and no right is acquired except that based upon authorized acts of such officers. *Bi-*

*gler v. Graham County,* 128 Ariz. 474, 626 P.2d 1106 (App.1981). No statutory duty requires the superintendent to give notice of a health care provider's qualified status.

The simple fact is that Otero could have complied with the requirements of the Medical Malpractice Act, within the time limitation available to him, but he failed to do so. The opinion rewrites the Act and revives the claim that Otero allowed to lapse.

I would affirm the Court of Appeals.