598 P.2d 211

Richard E. RUSHING, Plaintiff-Appellee,

v.

LOVELACE–BATAAN HEALTH PROGRAM,
Defendant-Appellant.

No. 12315.

Supreme Court of New Mexico.

July 9, 1979.

Sutin, Thayer & Browne, Ronald Segel, Albuquerque, for defendant-appellant.

Wycliffe V. Butler, Albuquerque, for plaintiff-appellee.

## OPINION

SOSA, Chief Justice.

Plaintiff brought suit in the District Court of Bernalillo County seeking a judgment declaring that he was entitled to coverage for surgery, pursuant to a group health agreement between his employer, the City of Albuquerque, and defendant, Lovelace-Bataan Health Program (LBHP). Defendant denied liability. The district court entered judgment for plaintiff in the amount of $5983.26. Defendant appeals. The question we address in this appeal is whether the court erred in concluding that plaintiff was entitled to reimbursement un-

der the health care agreement for the surgery he underwent.

Plaintiff was a member of LBHP. During the last week of March 1976, he sought approval from the Medical Director of LBHP for intestinal bypass surgery, which plaintiff desired for the purpose of weight reduction. The Medical Director disapproved the surgery. Nevertheless, plaintiff underwent the surgery on April 5, 1976. The district court found that the surgery had been wrongfully disapproved and concluded that plaintiff was entitled to payment of the reasonable medical expenses incurred by him for the surgery.

Defendant's first contention is that the court erred in finding that plaintiff had satisfied a condition precedent to bringing suit. Defendant contends that plaintiff's suit was premature and should have been dismissed because plaintiff failed to allege or to prove that he had complied with the grievance procedures provided for in Section VI, paragraph 14, of the group health agreement.

▇ Plaintiff counters that defendant had sufficient knowledge of his claim and that defendant's log could be considered as his written request. Plaintiff also argues that defendant waived the formal claim requirement when it denied his claim. We disagree.

Section VI, paragraph 14, provides:

DISPUTES: No action at law or in equity shall be brought upon a dispute between LBHP or any of its Providers and a Member *until that Member has made a written claim to LBHP and exhausted the remedies of the grievance procedure established by LBHP.* (Emphasis added.)

Paragraph 14 is clear and unambiguous. It provides that plaintiff was required to file a written claim with LBHP and to exhaust the available grievance procedure prior to filing any action. Plaintiff failed to do so. He orally requested approval for the surgery. His request was orally denied by the Medical Director. Plaintiff never made a written claim to LBHP of that denial. In-

stead, he chose to proceed with the surgery one week later, despite the Medical Director's verbal disapproval of the surgery. A contractual provision which is clear and unambiguous is conclusive. *See Woodson v. Lee,* 73 N.M. 425, 389 P.2d 196 (1963); *Shattuck v. Precision-Toyota, Inc.,* 115 Ariz. 586, 566 P.2d 1332 (1977). It is our opinion that under these facts the district court erred in concluding that plaintiff had satisfied a condition precedent to filing the action.

▇ Defendant's second contention is that the court erred in finding that the surgery performed on plaintiff was medically reasonable, that it was not for cosmetic purposes, and that it was not experimental. The court found that plaintiff's surgery was medically reasonable and necessary in that his weight was causing him to have "dangerously high blood pressure placing his health in jeopardy." We have reviewed the entire record and find that there is no evidence to support this finding. Plaintiff stated in his affidavit that he had a breakdown, that he had severe emotional problems, and that he had built up a lot of tension. The doctor who performed the surgery stated that plaintiff's weight problem "predisposes him to a variety of health problems as he grows older, such as arthritis, gall-bladder disease, diabetes, heart disease, pulmonary insufficiency, and back pain." In addition, plaintiff's requested findings of fact and conclusions of law made no mention that plaintiff had dangerously high blood pressure. This finding is not sustained by any evidence and is in error. We hold that there is sufficient evidence to support the findings that the surgery was not for cosmetic purposes or experimental.

▇ Defendant's third contention is that the court erred in finding that plaintiff's surgery was an emergency. Section I, paragraph 14 of the group health agreement defines "emergency service" as:

Those services required for alleviation of severe pain, or immediate diagnosis and treatment of unforeseen medical condi-

tions, which, *if not immediately diagnosed and treated,* could lead to disability or death. (Emphasis added.)

Section VII, paragraph· 18, subparagraph (a) of the agreement states that coverage for emergency services is provided where

[t]he condition so treated required treatment of such an *immediate nature* that the Member's health might have been jeopardized by the delay . . . or the shock or unconsciousness of a Member caused by the accident or illness . . . (Emphasis added.)

We have reviewed the entire record and fail to find evidence to support the court's finding that plaintiff's operation constituted "emergency services." Although plaintiff's weight may have presented a significant threat to his future health, we do not feel that it was of such an "immediate nature" that his health would have been jeopardized by filing a written claim and exhausting the available grievance procedures prior to undergoing the surgery. The contractual definition of what constitutes "emergency services" is conclusive. *Woodson, supra; Shattuck, supra.*

We hold that the district court erred in concluding that plaintiff was entitled to payment for the expenses he incurred in undergoing the surgery. The decision of the court is therefore reversed.

IT IS SO ORDERED.

McMANUS, Senior Justice and EASLEY, J., concur.