2006-NMCA-084

140 P.3d 532

**W. Jack BUTLER, Third–Party Plaintiff/Cross–Claimant– Appellant,**

v.

**DEUTSCHE MORGAN GRENFELL, INC., Defendant–Appellee,**

and

**Deutsche Bank, AG, Suncor Energy Inc., Syncrude Canada Ltd., and Exxon–Mobil Corporation, Third–Party Defendants–Appellees.**

Nos. 25,556; 25,557; 25,558.

Court of Appeals of New Mexico.

April 25, 2006.

Certiorari Denied, No. 29,851, July 27, 2006.

Victor R. Marshall, Diane P. Donaghy, Victor R. Marshall & Associates, P.C., Albuquerque, NM, for Appellant.

John R. Cooney, Charles A. Armgardt, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, NM, Jeffrey Barist, Milbank, Tweed, Hadley, & McCloy LLP, New York, NY, Michael D. Nolan, Andrew M. Leblanc, Milbank, Tweed, Hadley, & McCloy LLP, Washington, DC, for Appellees Deutsche Bank, AG and Deutsche Morgan Grenfell, Inc.

William L. Lutz, David P. Lutz, Martin, Lutz, Roggow, Hosford & Eubanks, P.C., Las Cruces, NM, for Appellees Suncor Energy Inc. and Syncrude Canada Ltd.

Robin A. Goble, Gary L. Gordon, Miller Stratvert P.A., Albuquerque, NM, for Appellee Exxon–Mobil Corporation.

## OPINION

PICKARD, Judge.

{1} In this case, we examine the pleading requirements for asserting the discovery rule in response to a motion to dismiss on the ground that a claim is time barred. We hold that a plaintiff must respond to such a motion with general factual allegations that, if proved, would successfully defeat the statute of limitations defense. We also examine whether a stay entered in this case tolled the statutes of limitations and whether the appellant is entitled to invoke the equitable tolling rule applicable to class action plaintiffs. Because neither of these latter theories tolled the statutes of limitations, and because the appellant failed to adequately plead the discovery rule, we affirm the district court's grant of all Defendants' motions to dismiss.

## BACKGROUND

{2} This case originated as a class action lawsuit, brought by shareholders of the Solv–Ex Corporation against the corporation, John Rendall (the founder and CEO of Solv–Ex), Appellant W. Jack Butler (Solv–Ex's president), and Deutsche Morgan Grenfell (DMG, a company that had helped to finance the corporation). Solv–Ex had plans to build plants to extract oil from tar sands in northern Canada. Solv–Ex claimed that it was developing new technology that would add billions of barrels of recoverable oil to the world reserves and would allow extraction in a manner more environmentally sound than traditional methods. In the mid–1990s, Solv–Ex stock plummeted, and in 1997, the company declared bankruptcy.

{3} The class plaintiffs filed a complaint in 1996 and an amended complaint in 1997. Plaintiffs alleged fraud, misrepresentation, breach of fiduciary duty, and violations of state securities laws. In 2002, Rendall (a defendant in the class action and nonparty in this case) filed an answer to the class action complaint. Rendall included in his answer purported cross-claims, counterclaims, or third-party claims against DMG, as well as other entities who had not previously been party to the litigation. Those entities included Deutsche Bank (the parent corporation of DMG) and several oil companies, including Third–Party Defendants in this appeal, Exxon Mobil, Syncrude, and Suncor. (The Third–Party Defendants as well as DMG will hereinafter be referred to as Defendants.) Rendall claimed that the oil companies had conspired with the Deutsche Bank Defendants to destroy Solv–Ex.

{4} In 2003, Butler (a defendant in the class action and the appellant in this case) filed an answer with claims similar to Rendall's against Deutsche Bank, DMG, Exxon Mobil, Syncrude, and Suncor. Butler claimed that the technology being developed by Solv–Ex presented a threat to the oil companies, who had conspired with the Bank to pull financing from Solv–Ex, causing the company to fail.

{5} Butler's pleading asserted five causes of action: (1) market manipulation, (2) antitrust violations, (3) prima facie tort, (4) defamation, and (5) malicious abuse of process. The district court dismissed all of Butler's claims against all parties to this appeal. The

court ruled that all of Butler's claims were time barred. The court also ruled that, as to some of the claims, Butler was not the real party in interest and had failed to state claims upon which relief could be granted. Finally, the court ruled that it lacked personal jurisdiction over Deutsche Bank, and it dismissed the Bank, Exxon, and Suncor and Syncrude as misjoined parties. Butler appeals all of these orders. Because we hold that all of Butler's claims are time barred, we do not address the other grounds on which the district court ruled.

## STANDARD OF REVIEW

■ {6} We review a district court's grant of a motion to dismiss de novo, accepting as true all of the appellant's well-pleaded allegations. *See Healthsource, Inc. v. X–Ray Assocs. of N.M., P.C.*, 2005–NMCA–097, ¶ 16, 138 N.M. 70, 116 P.3d 861 ("For purposes of a motion to dismiss, we accept all well-pleaded facts as true and question whether the plaintiff might prevail under any state of facts provable under the claim.").

## DISCUSSION

{7} Butler argues that his claims were not time barred for three reasons: (1) the district court stayed the proceedings, thereby tolling the statutes of limitations; (2) the statutes were equitably tolled under the rule that mandates such tolling for putative class action plaintiffs during the period when a class is awaiting a certification decision; and (3) all the statutes are subject to the discovery rule, and Butler could not have discovered his claims until 2002, less than a year before he asserted them.

{8} There has been some confusion over which statutes of limitations are applicable to Butler's claims. However, Butler does not argue that any of his claims are subject to a limitations period of more than four years. Thus, because Butler's pleading asserting those claims was filed on February 11, 2003, they are all barred if they accrued before February 11, 1999.

{9} Butler appears to make some assertion that the events underlying his claims occurred more recently, making his claims facially timely. However, as noted above, all of his substantive arguments involve reasons why he should be permitted to assert his claims even if they are facially time barred. Moreover, his claims all center around acts purportedly taken with the purpose of destroying Solv–Ex. Because Solv–Ex was effectively destroyed when it filed for bankruptcy in 1997, we agree with Defendants that the alleged acts underlying the claims must have occurred prior to that time. Even Butler, citing an *Albuquerque Journal* article, states that it is "undisputed" that the alleged market manipulation occurred in 1996. Thus, because the longest limitations period at issue here is four years, all of Butler's claims are facially time barred, and Butler may continue to assert them only if the statutes were tolled or he can invoke the discovery rule. We now turn to Butler's three arguments, rejecting them all.

### 1. The Stay Entered in 1997 Did Not Toll the Statutes

■ {10} Butler first argues that an order entered early in the case "stayed the proceedings," thereby tolling the applicable statutes of limitations. That order, entered on January 30, 1997, states in full as follows:

THE parties have agreed to an extension of time for Defendants Solv–Ex Corporation, John Rendall, and W. Jack Butler and Defendant Deutsche Morgan Grenfell, Inc., to respond to Plaintiffs' Memorandum of Points and Authorities in Support of Class Certification and to respond and/or make objections to Plaintiffs' First Request for Production and Inspection of Documents to and including 30 days following entry of orders on Motions to Dismiss or Stay to be filed by Defendants, and the Court being fully advised in the premises,

IT IS ORDERED that Defendants Solv–Ex Corporation, John Rendall, and W. Jack Butler, and Defendant Deutsche Morgan Grenfell, Inc., shall have an extension of time to respond to Plaintiffs' Memorandum of Points and Authorities in Support of Class Certification and to respond and/or make objections to Plaintiffs' First Request for Production and Inspection of Documents to and including 30 days after entry of orders denying the Motion to

Dismiss and Motion to Stay to be filed by Defendants Solv–Ex Corporation, John Rendall, and W. Jack Butler, and Defendant Deutsche Morgan Grenfell, Inc.

The typed title of the order is "AGREED ORDER." However, after that title, the district judge added by hand the phrase "STAYING PROCEEDINGS," and she initialed this change.

{11} Butler argues that this order tolled the statutes of limitations because the change in the title of the order transformed it into a complete stay of the proceedings. Butler states,

> The parties had agreed to language in the order that stayed the proceedings until certain motions were completely briefed and the related orders were entered. However, when the Agreed Order was submitted to the court for approval, Judge Conway expanded the impact of the order by hand-writing on it that it "stayed the proceedings."

Butler argues that this stay has never been dissolved and that it prevented him from filing his claims. We disagree for two reasons.

{12} First, substance trumps form when interpreting court orders. *See Martinez v. Friede*, 2004–NMSC–006, ¶ 27, 135 N.M. 171, 86 P.3d 596 ("[I]t is of little or no consequence that the district court did not explicitly rely on Rule 1–060(B) [NMRA] in its order granting a new trial. The substance of the order controls, not its title or form."). The clear goal of this order was to provide an "extension of time." The order anticipated that the original defendants, including Butler, would file motions to dismiss and motions to stay, and it provided extra time so that they could do so without missing what would ordinarily have been the deadline for responding to Plaintiffs' memorandum and discovery requests. Indeed, the original defendants, including Butler, filed motions to dismiss the complaint and motions to stay the proceedings on the day after this order was entered. The fact that the judge added the phrase "staying proceedings" to the title does not change the clear effect of the order.

{13} Second, Butler's own actions throughout the course of this litigation belie his assertion that the proceedings were completely stayed by the January 30, 1997, order. As noted, on the day after entry of that order, Butler filed a motion to stay the proceedings on the ground that the case was duplicative of an ongoing class action suit being litigated in a New York federal district court. Obviously, if Butler had viewed the January 30, 1997, order as staying all proceedings, as he now argues, he would not have needed to file a motion to stay on the day after it was entered. Moreover, Butler repeatedly argues that the stay was never lifted. However, Butler does not explain the basis on which he thought he was permitted to file his claims when he did. If, as he asserts, the stay prevented him from filing his claims and was never lifted, then presumably Butler would have needed to file a motion to lift the stay before filing his cross-complaint. Thus, we agree with Defendants that the January 30, 1997, order did not toll the statutes of limitations with respect to Butler's claims.

{14} Butler also argues that subsequent actions by the parties and the various judges involved indicate that everyone perceived the January 30, 1997, order as staying all proceedings. Specifically, Butler points to an order entered on October 10, 2003, entitled "ORDER DENYING MOTIONS TO DISMISS FOR PERSONAL JURISDICTION PENDING JURISDICTIONAL DISCOVERY." Butler argues that this order acted to lift the prior stay for the limited purpose of conducting discovery on jurisdictional issues. Thus, he argues, it supports his position that there was in fact a stay in place at the time. We disagree with Butler's interpretation of the October 10, 2003, order.

{15} The order was entered in response to motions made by Suncor and Syncrude (appellees in this case) to dismiss the claims brought by Butler and Rendall for lack of personal jurisdiction. The order states as follows:

> Having considered the motions, and the argument of counsel, the Court believes that the question cannot be decided prior to allowing limited jurisdictional discovery on the issues pertinent to the motions.

It is therefore ORDERED that, for the present, the motions are denied. The parties may engage in discovery limited to issues pertinent to the question of personal jurisdiction[.]

{16} This order indicates only that discovery relevant to personal jurisdiction had not occurred and that it would be inappropriate to rule on the motions to dismiss in the absence of such discovery. At most, the order implies that there was a stay on discovery in place at the time. A stay on discovery would not have prevented Butler from filing his claims. *See Korody–Colyer Corp. v. Gen. Motors Corp.*, 828 F.2d 1572, 1575 (Fed.Cir. 1987) (holding statute of limitations not tolled because stay on discovery did not prevent amending complaint to add new claims and stating that "[n]owhere does [the plaintiff] explain how a claim that had not been made could have been stayed"); *Lender's Serv., Inc. v. Dayton Bar Ass'n*, 758 F.Supp. 429, 444 (S.D.Ohio 1991) (holding claims against new defendants time barred because stay of entire proceedings pending outcome of state-court litigation did not toll statute of limitations and stating that "[s]ince no claim had yet been asserted against the individual defendants at the time the stay order was entered, the stay order could not possibly have applied to new claims being asserted against new defendants"). Thus, the October 10, 2003, order does not support Butler's contention that the January 30, 1997, order stayed the entire proceedings and prevented him from filing his claims against Defendants.

{17} Finally, Butler argues that the order tolled the statutes of limitations by operation of the following statute: "When the commencement of any action shall be stayed or prevented by injunction order or other lawful proceeding, the time such injunction order or proceeding shall continue in force shall not be counted in computing the period of limitation." NMSA 1978, § 37–1–12 (1880). We disagree that this statute has any applicability under the present circumstances.

{18} The statute refers only to injunctions or other orders that preclude "the commencement" of an action. Butler argues that the order prevented him from commencing separate actions against Defendants in this case. However, Butler provides no support for this assertion, and we have noted that the order refers only to an extension of time in which to file certain documents. But even if the order could be said to have completely stayed the class action proceedings, it would not have precluded Butler from filing a separate lawsuit naming the present Defendants, which is the only situation to which Section 37–1–12 would apply.

{19} Butler's sole response to the contention that he could have filed a separate lawsuit is that even if the order did not prevent him from doing so, such action should not be required because "courts and the Rules of Civil Procedure generally promote the litigation of similar issues affecting similarly situated parties in one piece of litigation, rather than promoting piecemeal litigation." We reject this vague policy argument and hold that the statutes of limitations were not tolled by the January 30, 1997, order or by operation of Section 37–1–12.

**2. The Rule Involving Equitable Tolling for Putative Class Members Is Not Applicable to Butler**

{20} Butler next argues that the statutes of limitations applicable to his claims were tolled pursuant to the rule of *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). In those cases, the United States Supreme Court held that when a class action is filed, the statute of limitations is tolled during the pendency of the class certification decision as to " 'all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.' " *Crown, Cork & Seal Co.*, 462 U.S. at 353–54, 103 S.Ct. 2392 (quoting *American Pipe*, 414 U.S. at 554, 94 S.Ct. 756). The Court noted that in the absence of such a rule, class members would be forced to intervene in the class action or file a separate suit to guard against the possibility that their claims would be time barred when and if class certification was denied. *See Crown, Cork & Seal Co.*, 462 U.S. at 350, 103 S.Ct. 2392. Such a

"needless multiplicity of actions," the Court noted, was one of the main ills that Federal Rule of Civil Procedure 23 was designed to prevent. *Id.* at 351, 103 S.Ct. 2392.

{21} Butler argues that even though he was a defendant in the original class action, he should nonetheless receive the benefit of the *American Pipe* rule. He argues that, because the stay prevented him from filing claims against Defendants, his "only recourse" would have been "to initiate a separate lawsuit against [these Defendants], which would have required the litigation of many of the same issues that should have been litigated in this case." Butler appears to argue that this is the situation the *American Pipe* rule seeks to prevent. We hold that the *American Pipe* rule is not applicable to Butler's claims for two reasons.

{22} First, Butler was never a class member. In fact, the class action complaint specifically excluded him from the definition of the class, as did the district court's eventual order certifying the class. Butler argues that, notwithstanding these specific exclusions, he should be considered a class member because he has suffered harms similar to those alleged by the class, i.e., the devaluing of his Solv–Ex stock. We do not agree. Under the clear terms of the *American Pipe* rule, the statute of limitations is tolled only as to those who " 'would have been parties had the suit been permitted to continue as a class action.' " *Crown, Cork & Seal Co.,* 462 U.S. at 353–54, 103 S.Ct. 2392 (quoting *American Pipe,* 414 U.S. at 554, 94 S.Ct. 756). Butler does not fit into that category.

{23} Second, the policy rationales behind the *American Pipe* rule would be thwarted were we to allow Butler to take advantage of it. In *Crown, Cork & Seal Co.,* the Court noted that the *American Pipe* rule was "not inconsistent with the purposes served by statutes of limitations." *Crown, Cork & Seal Co.,* 462 U.S. at 352, 103 S.Ct. 2392. The Court stated that the purpose of a statute of limitations is to "put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights." *Id.* The Court noted that when a class action is filed, the defendant is made aware of the nature of the claims and the " 'number and generic identi-

ties' " of those who may be class members. *Id.* at 353, 103 S.Ct. 2392 (quoting *American Pipe,* 414 U.S. at 555, 94 S.Ct. 756). Thus, the Court remarked, the filing of a class action puts defendants on notice that they should preserve evidence and witnesses, and therefore defendants are not prejudiced by the tolling rule. *Crown, Cork & Seal Co.,* 462 U.S. at 353, 103 S.Ct. 2392.

{24} In this case, none of the Defendants, with the exception of DMG, are or have ever been defendants in the underlying class action. Moreover, many of Butler's claims, particularly those alleging prima facie tort, defamation, and malicious abuse of process, are substantially different from the claims asserted by the class plaintiffs. They do not, as Butler claims, raise "many of the same issues that should have been litigated in this case." For these reasons, Defendants would not have been put on any sort of "notice" of Butler's claims by the filing of the class action complaint. *See Crown, Cork & Seal Co.,* 462 U.S. at 355, 103 S.Ct. 2392 (Powell, J., concurring) ("[W]hen a plaintiff invokes *American Pipe* in support of a separate lawsuit, the district court should take care to ensure that the suit raises claims that concern the same evidence, memories, and witnesses as the subject matter of the original class suit, so that the defendant will not be prejudiced." (internal quotation marks and citation omitted)). Thus, we hold that the statutes of limitations on Butler's claims were not tolled by the filing of the class action complaint.

### 3. Butler Failed to Properly Invoke the Discovery Rule

{25} Finally, Butler argues that each of the relevant statutes of limitations is subject to the "discovery rule" and that his claims are timely because he could not have discovered the facts underlying them until sometime in 2002. He argues that the district court improperly dismissed his claims as time barred because factual disputes existed with regard to when he discovered or should have discovered his claims. We disagree.

{26} Where applicable, the discovery rule dictates that a cause of action does not

accrue for purposes of calculating the limitations period until the plaintiff discovers, or should have discovered in the exercise of reasonable diligence, the facts that underlie his or her claim. *See Martinez v. Showa Denko, K.K.,* 1998–NMCA–111, ¶¶ 18–19, 125 N.M. 615, 964 P.2d 176. We agree that the discovery rule applies to some of Butler's claims. *See, e.g.,* NMSA 1978, § 57–1–12(B) (1979) (applying discovery rule to antitrust claims). But Butler has provided us with no authority indicating that the discovery rule should be applied to his tort claims. However, we need not decide that question because we hold that, even if the discovery rule is applicable to all of Butler's claims, he has failed to make factual allegations that, if proved, would successfully invoke the rule and defeat Defendants' statute of limitations defenses.

■ {27} The general rule is that "[t]he defense of the statute of limitations may be raised by motion to dismiss where it is clearly apparent on the face of the pleading that the action is barred." *Apodaca v. Unknown Heirs of the Tome Land Grant,* 98 N.M. 620, 623–24, 651 P.2d 1264, 1267–68 (1982). However, where there are disputed facts, it is generally the province of a jury to determine the date on which a plaintiff became aware or should have become aware of the facts underlying his or her claim. *See Williams v. Stewart,* 2005–NMCA–061, ¶ 16, 137 N.M. 420, 112 P.3d 281. If such factual disputes exist, granting a motion to dismiss on statute of limitations grounds would be improper.

■ {28} The issue we confront here is what a plaintiff must plead in order to invoke the discovery rule, thereby precluding the district court from granting a motion to dismiss on statute of limitations grounds. When a defendant makes a prima facie showing that a claim is time barred, a plaintiff attempting to invoke the discovery rule has the burden of "demonstrat[ing] that if [he or] she had diligently investigated the problem [he or] she would have been unable to discover" the facts underlying the claim. *Martinez,* 1998–NMCA–111, ¶ 22, 125 N.M. 615, 964 P.2d 176. We acknowledge that *Martinez* involved a motion for summary judgment rather than a motion to dismiss. *Id.*

¶ 11. However, we hold that even at the motion to dismiss stage, a plaintiff must have alleged in the complaint, or must respond to the motion to dismiss with, factual allegations that, if proved, would support application of the discovery rule. *See Romero v. U.S. Life Ins. Co. of Dallas,* 104 N.M. 241, 242–43, 719 P.2d 819, 820–21 (Ct.App.1986) (reversing the denial of a motion to dismiss where claims were facially time barred and there were "no allegations in the complaint as to tolling and estoppel"); *see also Aldrich v. McCulloch Props., Inc.,* 627 F.2d 1036, 1041 n. 4 (10th Cir.1980) (stating that where the dates in the complaint show that the right sued upon has been extinguished, the plaintiff bears the burden of establishing a factual basis for tolling the statute of limitations, and "[s]tatute of limitations questions may, therefore, be appropriately resolved on a [Rule 12(b)] motion"). All such well-pleaded allegations are to be taken as true, and great specificity is not required. However, in this case, we hold that Butler has failed to carry even this modest burden. *See Lee v. Rocky Mountain UFCW Unions & Employers Trust Pension Plan,* No. 92–1308, 13 F.3d 405, 1993 WL 482951, at *1 (10th Cir. Nov.23, 1993) (unpublished) ("[W]hile the plaintiff in *Aldrich* alleged specific facts that supported tolling the statute of limitations, Ms. Lee merely makes the bald-faced allegation that if she were given the opportunity to develop additional facts through discovery, she might be able to prove a continuing violation or inequitable conduct by Rocky Mountain. Such generalized allegations do not support tolling the statute of limitations." (internal quotation marks and citations omitted)).

■ {29} Butler's complaint contains no allegations whatsoever that would support a discovery rule argument. Thus, to invoke the discovery rule, he would have had to make the necessary allegations in his response to the motions to dismiss. In order to explain our decision that he failed to do so, we reproduce at length Butler's written response in the district court to the motions to dismiss:

Movants of course have every right to raise the statute of limitations, but as an affirmative defense. That affirmative de-

fense, in turn, may be subject to equitable estoppel, or tolling due to a discovery rule, depending on the facts. So appropriately raising the statute of limitations would allow the full consideration [of] other issues relevant to the tolling of the statute of limitations, i.e., whether the filing of the plaintiff's original complaint tolled the statute, whether the time of the claim should be understood to "relate back" to the filing of the original complaint, whether the claim "shall not be deemed to have accrued until the fraud, mistake, injury or conversion complained of, shall have been discovered by the party aggrieved," NMSA § [ ]37–1–7, whether the injury to Mr. Butler's reputation occurred at a later time, NMSA § [ ]37–1–8, or how the posture of this action, which appears, during part of its length, to have been stayed, affects tolling, [Section] 37–1–12. As has often been observed, combinations to achieve unlawful ends rarely operate in the open, and, in the absence of any allowed discovery thus far Butler can point only to matters such as coincidences of action, and behavior which makes little or no sense in the absence of an underlying motive, all matters which, if established, could well be improper concealment sufficient to toll limitations.

{30} We also note that at the hearing on the motions to dismiss, Butler's counsel made similar arguments:

> [A]ll of the [s]tatutes of [l]imitations that apply here have discovery provisions and continuing violation considerations that need to be more fully developed through discovery and so we would submit that it is not—the affirmative defenses are not ripe for consideration and the [s]tatute of [l]imitations defenses are not appropriate with respect to a motion to dismiss.

In response, counsel for Exxon argued:

> Any claimant wishing to take advantage of the discovery rule for [s]tatute of [l]imitations must demonstrate affirmatively in pleading their claim that they are entitled to take advantage of the rule for purpose of tolling the statute. The burden is incumbent on the claimant to demonstrate in their complaint that they meet the [s]tat-

ute of [l]imitations and the complaint that Mr. Butler submitted is completely void of allegations to meet that requirement.

Despite being given several more opportunities to make further statements, counsel for Butler did not respond to this argument.

{31} On appeal, Butler has slightly refined his assertions. The explanation in the appellate briefing of why Butler could not have discovered his claims within the limitations period is rather convoluted, but we will attempt to set it forth as best we can. In the late 1990s, several fund managers related to Deutsche Bank were prosecuted for fraud in England, in part based on their dealings with Solv–Ex. Subsequently, those fund managers were either acquitted, or a decision was made to abandon the prosecutions. In January 2002, the *London Times* published a one-column article reporting these events. Butler claims that this article was "the triggering revelation that gave [him] sufficient information to file his complaint." Butler appears to contend as follows: When the fund managers were acquitted, he realized that Deutsche Bank had committed some bad act and set its own fund managers up to take the fall so as to cover up that bad act. Butler assumed that the bad act the Bank was trying to cover up was a conspiracy with the oil companies (Defendants in this case) to destroy Solv–Ex.

{32} Butler's arguments regarding the discovery rule boil down to nothing more than a bare assertion that if he were allowed to pursue discovery, he might find something to support his contention that he could not have discovered his claims through the exercise of reasonable diligence within the limitations period. We note that Butler did not even argue in the district court, as he does on appeal, that the 2002 newspaper article was the "triggering revelation" that gave him the information necessary to assert his claims. In fact, he made no better excuse for his failure to timely discover his claims than the assertion that "combinations to achieve unlawful ends rarely operate in the open, and, in the absence of any allowed discovery thus far Butler can point only to matters such as coincidences of action, and behavior which makes little or no sense in the absence of an underlying motive[.]"

{33} We hold that Butler's contentions in the district court and on appeal are insufficient as a matter of law to invoke the discovery rule and defend against a motion to dismiss on statute of limitations grounds. If contentions such as these were sufficient, a statute of limitations defense that is subject to the discovery rule could never be successfully asserted in a motion to dismiss, and that is clearly not the rule. *See Apodaca,* 98 N.M. at 623–24, 651 P.2d at 1267–68 ("The defense of the statute of limitations may be raised by motion to dismiss where it is clearly apparent on the face of the pleading that the action is barred."); *Romero,* 104 N.M. at 242–43, 719 P.2d at 820–21 (reversing the denial of a motion to dismiss where claims were facially time barred and there were "no allegations in the complaint as to tolling and estoppel").

{34} Most importantly, Butler has made no showing that he satisfied the duty of inquiry that accompanies the discovery rule. When the discovery rule is applicable, the cause of action accrues "when a plaintiff acquires knowledge of facts, conditions, or circumstances which would cause a reasonable person to make an inquiry leading to the discovery of the concealed cause of action." *Williams,* 2005–NMCA–061, ¶ 14, 137 N.M. 420, 112 P.3d 281 (internal quotation marks and citation omitted). In other words, the awareness of an injury creates a duty to inquire into its causes.

{35} In this case, Butler was aware of the injuries of which he complains by 1997, when Solv–Ex was forced to declare bankruptcy. Indeed, Butler states that "it is undisputed that the market manipulation occurred in the Fall of 1996." We also note that the class action complaint, initially filed in 1996, alleged a conspiracy between Butler, Rendall, and DMG to manipulate the market. Moreover, in 1996, the Solv–Ex corporation sued several investment or consulting firms, alleging a conspiracy to drive down the price of Solv–Ex stock. *See Solv–Ex Corp. v. Quillen,* No. 96 CIV. 6057, 1997 WL 452023, at *1 (S.D.N.Y. Aug.7, 1997) (unpublished). These circumstances demonstrate that Butler had knowledge in 1996 that Solv–Ex had suffered injuries and that some parties might have conspired to cause those injuries. This created a duty on the part of Butler to inquire into the possible causes of his injuries.

{36} We are unpersuaded by Butler's argument that even if he knew of his injuries, he had no way of knowing who was responsible for them until the 2002 newspaper article. We agree that a plaintiff should not file suit when he or she does not know the identity of the wrongdoer. However, the duty to inquire includes the duty to attempt to determine the identity of the wrongdoer. *See Tarnowsky v. Socci,* 271 Conn. 284, 856 A.2d 408, 412 (2004) (collecting cases and noting that "[t]he majority of [jurisdictions that have addressed the question] have held ... that a cause of action does not accrue until the plaintiff has discovered *or should have discovered* the identity of the tortfeasor" (emphasis added)). Thus, knowing of his injuries, Butler had a clear duty to try to ascertain who was responsible for them. He has shown no attempt to do so, and he has provided no justification for his failure to do so.

{37} We also reject Butler's repeated assertions that he cannot be expected to have learned of the facts underlying his claims because he has not yet been permitted to conduct any discovery on the merits. For purposes of analysis, we accept Butler's contention that he has never been permitted to conduct any meaningful discovery. However, as we explained above, we reject Butler's argument that the motion to dismiss was improperly granted because, if he were permitted to conduct discovery, he might find something that would support his contentions.

{38} Butler's argument is flawed because he has never made any specific allegations regarding what he hoped to find in discovery. Accordingly, we believe this situation is analogous to a motion under Rule 1–056(F) NMRA. Rule 1–056(F) allows a party faced with a motion for summary judgment to ask the district court to stay its determination so that the non-movant can conduct discovery needed to rebut the motion. Under Rule 1–056(F), a party must submit an affidavit explaining why additional time and discovery are needed. The federal courts have estab-

lished that under the analogous Federal Rule of Civil Procedure 56(f), such affidavits must contain more than conclusory statements about the need for discovery:

> The party seeking to use rule 56(f) may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, but rather he must specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.

*Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 843 (11th Cir.1989) (internal quotation marks and citation omitted).

{39} Here, Butler clearly alerted the district court to his contention that he needed to conduct discovery in order to rebut Defendants' assertions that his claims were time barred. However, as we have pointed out, he never made any specific allegations regarding what he hoped to find in discovery. Rather, he made "vague assertions that additional discovery [would] produce needed, but unspecified, facts." *Id.* (internal quotation marks and citation omitted). We decline to allow Butler to defeat the motions to dismiss on such vague assertions. Without any viable theory that, if proved, would support tolling or application of the discovery rule, Butler is not entitled to expend the parties' time and resources on discovery.

{40} Moreover, as we explained in examining Butler's arguments with regard to the purported stay entered in this case on January 30, 1997, a stay on discovery would not have prevented Butler from filing a separate action against the oil companies and the Deutsche Bank Defendants. Had he done so, he would have had the ability to conduct discovery in that proceeding. In addition, even without the benefit of formal discovery, Butler was free to pursue informal investigations into the conduct of Defendants. We reject Butler's argument that he should be excused for not having done so on the ground that such investigation would have been fruitless because conspirators do not voluntarily give up information regarding their unlawful acts. We reiterate our holding that Butler's contentions were insufficient to invoke the discovery rule and defeat the statute of limitations defenses.

{41} Finally, Butler attempts to analogize his situation to the circumstances present in *Otero v. Zouhar*, 102 N.M. 482, 697 P.2d 482 (1985), *overruled on other grounds by Grantland v. Lea Regional Hosp.*, 110 N.M. 378, 380, 796 P.2d 599, 601 (1990). *Otero* involved the procedures required by the Medical Malpractice Act and is completely inapposite to this case. In *Otero*, the Medical Malpractice Act required the plaintiff to submit his claim to the medical review commission prior to filing in district court. *Id.* at 484, 697 P.2d at 484. Submission to the commission would have tolled the statute of limitations, and the plaintiff would have had thirty days following a decision from the commission to file in district court. *Id.* Instead of following this procedure, the plaintiff filed suit in district court and then submitted his claim to the commission. *Id.* He then moved the district court to stay the action pending a decision from the commission, which the court did. *Id.* The defendant argued that the district court should have dismissed the complaint, rather than staying the action. *Id.* at 485, 697 P.2d at 485.

{42} Our Supreme Court agreed that the proper procedure would have been for the district court to dismiss the complaint without prejudice. *Id.* Then, the plaintiff's submission to the commission would have tolled the statute of limitations, and he could have refiled his complaint in district court following a decision by the commission. *Id.* However, the Court declined to order dismissal of the case, stating,

> Were we now to require dismissal of the complaint, long past the 30 days within which a new complaint could have been filed, we would be holding the plaintiff responsible for the trial court's error. . . . Plaintiffs should not be denied their day in court because of incorrect rulings and attendant delays incurred by appellate procedures.

*Id.*

{43} *Otero* does not help Butler. First, as we have demonstrated, any stay in this case was only a stay of discovery that would not

have prevented Butler from filing his claims against the present Defendants. More importantly, Butler has not shown that the consequences of any error by the district court are being visited on him. Thus, the policy concerns implicated in *Otero* are not present here, and we decline to apply that case.

{44} In closing, we note that our holding in this case does nothing more than apply the familiar rule that a motion to dismiss should be granted only where "it appears that plaintiff can neither recover nor obtain relief under any state of facts provable under the claim." *Valdez v. State*, 2002–NMSC–028, ¶ 4, 132 N.M. 667, 54 P.3d 71 (internal quotation marks and citation omitted). Here, Butler's complaint contains no allegations whatsoever that would support a discovery rule argument. He responded to the motions to dismiss only by noting that the statutes of limitations "may be subject to equitable estoppel, or tolling due to a discovery rule, depending on the facts." Thus, because Butler's claims are facially time barred and he has alleged no theory that would implicate the discovery rule, "it appears that [he] can neither recover nor obtain relief under any state of facts provable under the claim." *Id.* (internal quotation marks and citation omitted).

{45} We caution that the principles articulated in this case are to be used sparingly and only in egregious circumstances like those present here. Our cases and procedural rules mandate that if there is any possibility that disputed facts might be relevant to the ultimate disposition of a case, a court should be exceedingly cautious in dismissing the case before discovery has occurred. Here, however, Butler has been aware of his injuries and involved in numerous lawsuits related to them since 1996. Despite this knowledge and the passage of a significant amount of time, Butler was unable to provide any legitimate justification for his failure to timely bring his claims. More importantly, he provided no justification for his failure to investigate his injuries as required by the discovery rule. We find Butler's argument regarding the 2002 newspaper article to be exceedingly unpersuasive. But-

ler has provided no rational explanation for why his learning of the acquittal of the DMG fund managers would cause him to suspect completely unrelated companies in a worldwide conspiracy, or why, if such a conspiracy exists, he could not have alleged it sooner. We decline to allow the subversion of the policies behind statutes of limitations under such circumstances.

## CONCLUSION

{46} We affirm the dismissal of all of Butler's claims against all Defendants on the ground that they are barred by the statutes of limitations.

{47} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and RODERICK T. KENNEDY, Judges.