# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**MARTHA VELASQUEZ,**

Plaintiff-Appellant,

v.                                                    NO. 27,522

**AMERICAN MODERN LIFE INSURANCE CO.,**
**GENERAL ELECTRIC EVENDALE**
**EMPLOYEES FEDERAL CREDIT UNION**
**(a/k/a General Electric Federal Credit Union)**
**and SHAUNA R. Lawlor, individually and**
**as an employee of General Electric Evendale**
**Employees Federal Credit Union,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Linda M. Vanzi, District Judge**

Tucker Law Firm, P.C.
Steven L. Tucker
Santa Fe, NM

Steven J. Vogel
Albuquerque, NM

Law Offices of David A. Archuleta
David A. Archuleta
Albuquerque, NM

for Appellant

Civerolo, Gralow, Hill & Curtis

M. Clea Gutterson
William P. Gralow
Albuquerque, NM

for Appellee American Modern Life Insurance Co.

Michael E. Kushner, P.A.
Michael E. Kushner
Albuquerque, NM

Aldridge, Grammar, Jeffrey, & Hammar, P.A.
Kevin Hammar
Albuquerque, NM

for Appellees General Electric Evendale Employees
Federal Credit Union and Shauna R. Lawlor

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

In this case, we affirm an order for summary judgment granted in favor of Defendants-Appellees American Modern Life Insurance Company, General Electric Evendale Employees Federal Credit Union, and Shauna Lawlor (collectively Defendants). Doing so, we hold that Plaintiff's disability insurance policy had ended prior to her receiving a determination of disability from the United States Social Security Administration. Plaintiff-Appellant Martha Velasquez argues the existence of genuine issues of material fact that render summary judgment improper and contends that the district court erroneously denied her motion for additional discovery.

We disagree and hold that the district court did not abuse its discretion in denying additional discovery.

**BACKGROUND**

Although the parties dispute the legal significance of certain facts, neither materially disputes what actually took place. Velasquez purchased a new Mitsubishi automobile with financing through the Credit Union on July 22, 1997. Lawlor, an employee of the Credit Union, acted as Velasquez's loan officer, and during the course of the transaction, Velasquez also agreed to refinance her Chevrolet truck. As a precaution, Velasquez purchased the disability insurance policy that forms the basis of this appeal. That policy insured her for "Accident and Health (Total Disability)" and covered both the Mitsubishi and the Chevrolet.

Although sold by the Credit Union, the policy was written and issued by American Modern. By its terms, in the event of a "total disability," American Modern agreed to pay Velasquez up to $50,000.00 for any outstanding balance on both vehicles at a rate of not more than $750.00 per month. In defining total disability, the policy incorporates a two-level system. Under level one, a person is totally disabled if "during the first 12 months of disability, [one is] unable to perform the substantial and material duties of [one's] *own occupation*." Under level two, a person continues to be totally disabled if "after the first 12 months of disability, [one is] unable to

perform the substantial and material duties of *any occupation* for which [one is] reasonably qualified." Additionally, the following language appears on the policy's second page: "You may not start any legal action until 60 days after you send us proof of your disability. Also, legal action may not be started more than 3 years after the proof is filed." The policy does not specify what constitutes adequate proof of disability to trigger payment.

On July 26, 1999, Velasquez filed a disability claim on the policy. On the claims form, she outlined her employment status, educational background and professional history, and for twelve months thereafter, American Modern paid Velasquez under level one of the policy. At the conclusion of that time, Velasquez sought to continue coverage under level two, but her request was denied when American Modern determined that she "was able to perform the duties of sedentary work and did not meet the definition of total disability . . . as defined in her certificate of insurance" under level two. American Modern's decision was based on materials submitted by Velasquez personally, including two separate medical evaluations and an employability evaluation. The last communication received by American Modern from Velasquez prior to 2004 was a medical evaluation received on March 7, 2000, after which American Modern transmitted its denial via a formal letter dated March 8, 2000. In closing, the letter stated, "if you are awarded a Social Security Disability

Benefit, we would gladly reconsider your claim at that time."

For more than four years after the denial, there was no communication between Velasquez and American Modern. Likewise, no contact occurred between Velasquez and the Credit Union until October 28, 2002, when the Credit Union demanded Velasquez pay $14,233.52, the remaining balance on her loans. Velasquez refused, and as a result, the Credit Union repossessed both vehicles. Nothing in the record indicates that American Modern became aware of these transactions at the time they occurred.

Velasquez eventually received a determination of full disability from the Social Security Administration on January 30, 2004. In its letter, the agency awarded her full benefits and found that Velasquez suffered "'severe' impairments," including "chronic cervical strain, and chronic recurrent right shoulder impingement, status-post subacromial decompression times two, and distal clavicle resection." It went on to find that Velasquez had sustained disabilities that rendered her unable "to perform fine and gross movements effectively" and established her date of disability as September 28, 1998. The record reveals no evidence that Velasquez ever sent American Modern a copy of the SSA letter or notified it of that letter's existence prior to the initiation of this lawsuit.

Velasquez next contacted Defendants on November 15, 2004. On that date,

Velasquez submitted letters to both American Modern and the Credit Union.

The letter sent to American Modern stated:

> Attached is my insurance policy with American Modern Life Insurance Company. I continue to be totally disabled and I have not heard from you with regards to the loss of my two (2) vehicles. You have failed to pay under the enclosed policy. You need to follow up on making all the payments that have not been made on this policy and replace the vehicles that [were] covered on this policy. Please do this immediately.

In her letter to the Credit Union, hand-delivered that same day, Velasquez requested all files pertaining to her case:

> This letter will follow up my verbal request for complete files regarding the two accounts I have with GE Federal Credit Union. Please provide me with complete files in the above-referenced accounts within ten (10) days of this letter. Should you have any questions, feel free to call me.

Neither letter referenced the SSA's determination of full disability, and the record indicates no evidence that copies were attached. Under any legally operable definition of "proof," we cannot regard her conclusory statement about a continuing disability as proof of a disability when she was specifically aware that American General was looking for documentary evidence that Social Security had determined her to be disabled. Submitting proof for evaluation of a claim quickly became a moot point. The next day, on November 16, 2004, Velasquez filed suit against Defendants in district court for breach of contract, insurance bad faith, violations of the New Mexico Insurance Practices Act, and violations of the Unfair Trade Practices Act.

Once the lawsuit had begun, the parties engaged in limited discovery.

6

Defendants turned over Velasquez's files to her, and Velasquez submitted a copy of the SSA's benefits letter to Defendants. On September 25, 2006, American Modern moved for summary judgment, claiming that no genuine issues of material fact existed in the case because the policy's three-year time to sue provision had run on Velasquez's claim. At the hearing, American Modern again argued that the three-year time to sue requirement ran on Velasquez's claim—at the absolute latest, on March 8, 2003, three years from their denial of her claim. In the alternative, it argued that the policy's sixty-day waiting period barred the claim because Velasquez filed suit only one day after her November 15, 2004 letter. Velasquez responded by arguing that the November 15, 2004 letter constituted "new proof" of her disability, and as such, re-set the three-year time to sue provision. In support of her answer, she submitted the affidavit of insurance industry expert Garth Allen. Mr. Allen supported Velasquez's argument, stating that her "November 15, 2004 letters and personal visit . . . constitute[d] new proofs of loss." Regarding Velasquez's failure to submit the SSA's determination of disability, he claimed that it was American Modern's responsibility to search out and find such documents. "If [American Modern] would have conducted even a cursory investigation, it would have learned that Ms. Velasquez was designated as Social Security disabled on January 30, 2004 and had not worked since 1998."

Velasquez also argued that summary judgment was improper on the basis that

7

discovery was incomplete. Under Rule 1-056(F) NMRA, she contended that the discovery already conducted in the case was insufficient to support a response to Defendants' motion for summary judgment. She also asserts that summary judgment was premature because additional discovery was required to establish, among other facts, the meaning of "proof" as used in the policy. At the hearing, held in conjunction with the hearing on the motion for summary judgment, the court asked Velasquez what she sought to achieve with additional discovery. She replied that further discovery would reveal exactly who at American Modern examined the claim, the nature of the claims adjustment process, various company standards, and the quality of investigation practiced by American Modern. At no time during the hearing did Velasquez mention an attempt to determine the meaning of "proof" in the language of the insurance contract, or relate her discovery needs to American Modern's statement of what it sought as proof in their letter of 2000.

The district court issued an order granting summary judgment on December 7, 2006. It held that after granting her all reasonable inferences and benefits of doubt, Velasquez was required to file her lawsuit "no later than March 8, 2003." "Nothing about the November [] 2004 letters, or her decision from the [SSA], remedy her failure to timely file her lawsuit." The court's order does not mention insurance contract ambiguity or any dispute as to the meaning of the term "proof." Likewise, the court

8

did not consider the agency argument of the Credit Union and Shauna Lawlor.

Velasquez now appeals the district court's order of summary judgment. She asserts, in addition to her discovery argument, the existence of genuine issues of material fact, namely, that reasonable minds could differ as to whether her actions in November 2004 constituted "new proofs" within the meaning of the policy. We now address those issues in turn.

**DISCUSSION**

**A.    The District Court's Refusal to Allow Additional Discovery was Proper**

Velasquez acknowledges that denials of additional discovery are reviewed for abuse of discretion, yet she urges us to review hers de novo. The rule is well-established that discovery orders are reviewed for abuse of discretion. *Paragon Found. v. N.M. Livestock Bd.*, 2006-NMCA-004, ¶ 31, 138 N.M. 761, 126 P.3d. 577. Such denials, even when made in conjunction with motions for summary judgment, are reviewed for abuse of discretion. *Design Prof'ls Ins. Cos. v. St. Paul Fire & Marine Ins. Co.*, 1997-NMCA-049, ¶ 18, 123 N.M. 398, 940 P.2d 1193. Accordingly, in order to find an abuse of discretion, we must determine that the district court's ruling was arbitrary, unreasonable, untenable, or contrary to logic and reason. *Edens v. Edens*, 2005-NMCA-033, ¶ 13, 137 N.M. 207, 109 P.3d 295; *New Mexicans For Free Enter. v. City of Santa Fe*, 2006-NMCA-007, ¶ 67, 138 N.M. 785, 126 P.3d

1149. And where valid arguments both support and oppose a finding of abuse of discretion, we defer to the ruling of the district court. *See Edens*, 2005-NMCA-033, ¶ 13; *New Mexicans for Free Enter.*, 2006-NMCA-007, ¶ 67.

Velasquez filed a motion pursuant to Rule 1-056(F) in order to obtain additional discovery prior to summary judgment. She asserted that Defendants "blocked discovery and depositions" and prevented "a proper response." As an exhibit to her motion, Velasquez included the affidavit of Steven Vogel (Vogel), her attorney, who stated his qualifications and achievements as well as the relevant facts of the case. "The critical and essential facts of this case," Vogel wrote, "lie with the testimony of Defendant's employees, [whose] depositions are now tentatively scheduled for October 2006." As a result, he claimed, Defendants' "[m]otion for [s]ummary [j]udgment [was] premature," and "essential facts, documents and depositions" were incomplete.

In *Butler v. Deutsche Morgan Grenfell, Inc.*, 2006-NMCA-084, ¶¶ 38-39, 140 N.M. 111, 140 P.3d 532, this Court described the pleading and procedural requirements for motions filed pursuant to Rule 1-056(F). That opinion held that Rule 1-056(F) "allows a party faced with a motion for summary judgment to ask the district court to stay its determination so that the non-movant can conduct discovery needed to rebut the motion." *Butler*, 2006-NMCA-084, ¶ 38. Under the rule, "a party must

submit an affidavit explaining why additional time and discovery are needed." *Id*. "[S]uch affidavits must contain more than conclusory statements about the need for discovery." *Id*. They must make "specific allegations" regarding what evidence the movant hopes to find and include a statement of how the evidence will enable him to properly address the motion for summary judgment. *See id*. ¶¶ 38-39. "[V]ague assertions that additional discovery [would] produce needed, but unspecified, facts" are insufficient. *Id*. (internal quotation marks and citation omitted).

Applying these standards, we hold that the district court properly denied Velasquez's motion. Neither Vogel's affidavit nor his arguments before the court constitute anything more than the conclusory statements insufficient under the rule. In the affidavit, Vogel stated that additional discovery would reveal "critical and essential facts" of the case, and that without discovery, Velasquez would be "unable to adequately respond" to Defendants' motion for summary judgment. "[E]ssential facts, documents and depositions," he concluded, were yet undisclosed, but the Court is left to wonder, *which facts*? Likewise, Vogel's oral arguments before the district court fail to meet the burden imposed by Rule 1-056(F). When asked, "Can you just outline what specifically you think [the additional discovery] information might be that will defeat summary judgment," Vogel stated that he hoped to determine "who investigated this claim," the nature of the claims adjustment process, and how policies

11

are sold. He explained, "I don't know exactly what they're going to say until I go talk to them."

While more specific than his affidavit, these are still insufficient to support his motion. None of these statements demonstrate how Velasquez would rebut the motion for summary judgment by obtaining additional discovery. In her brief, Velasquez argues that additional discovery would have allowed her to determine the proper definition of "proof" as that term is used in the insurance policy, but she did not raise this argument or make a showing that discovery might reveal this prior to the district court's order. It appears neither in Vogel's affidavit nor in his oral arguments at the hearing on the motion. The only time Velasquez raised the issue of defining "proof" below was in her motion for a reconsideration of the order for summary judgment, which came long after the district court first considered her Rule 1-056(F) motion. If providing "proof" of Velasquez's claim was Defendants' undischarged responsibility, neither the identity of persons "investigating" her claim nor knowledge of how the policy was sold materially affects a determination of what constitutes "proof." Because this was a claim that, for reasons discussed more completely below, American Modern properly regarded as closed, we see no reason that anyone but Velasquez had an obligation to obtain proof of disability later than March 2003.

We agree with Velasquez that courts should deny motions of this type

12

cautiously. As this Court stated in *Butler*, the specificity standard should be used "sparingly." *Butler*, 2006-NMCA-084, ¶ 45. "Our cases and procedural rules mandate that if there is any possibility that disputed facts might be relevant to the ultimate disposition of a case, a court should be exceedingly cautious in dismissing the case before discovery has occurred." *Id*. In this case, the district court was sufficiently cautious. As we stated above, Velasquez's requests were just not specific enough. All deal with the review of her claim; none address that American Modern requested in its March 2000 letter to know if she was "awarded a Social Security Disability Benefit" or why she failed to mention she had received one ten months before her letter, or particularly that she received one at all. More to the point, the argument that the bald statement that Velasquez "continue[d] to be totally disabled" constituted adequate proof appears nowhere in the record. Finally, none of Velasquez's claims tend to establish the likelihood that the review would have included any new proof of disability that Velasquez may have submitted.

Viewing Vogel's affidavit and Velasquez's assertions, we reassert our observation in *Butler* that such affidavits must contain more than conclusory statements about the need for discovery, and must specifically demonstrate how postponement of a ruling will enable the party to "rebut the movant's showing of the absence of a genuine issue of fact." 2006-NMCA-084.

13

Furthermore, a significant amount of discovery had already taken place when Velasquez's motion was denied. Prior to Defendants' motion for summary judgment, Velasquez was in possession of American Modern's entire claims file, and she had submitted interrogatories which were duly answered. Such discovery, without a showing of how additional information would specifically assist in rebutting Defendants' motion for summary judgment, is adequate. We now analyze the district court's order of summary judgment.

**B.     The District Court's Order of Summary Judgment was Proper**

We review orders of summary judgment de novo, *Fikes v. Furst*, 2003-NMSC-033, ¶ 11, 134 N.M. 602, 81 P.3d 545, and determine the existence of any genuine issues of material fact by making all reasonable inferences in the light most favorable to the non-moving party. *Nashan v. Nashan*, 119 N.M. 625, 627, 894 P.2d 402, 404 (Ct. App. 1995). In order to receive summary judgment, Defendants were required to make a prima facie case that Velasquez was not in compliance with the provisions of the insurance contract. The burden then shifted to Velasquez to show the existence of genuine issues of material fact. *Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 10, 139 N.M. 12, 127 P.3d 548.

**1.     Velasquez's Coverage Under the Policy Terminated Upon Repossession of Her Cars**

In October 2002, two and a half years after American Modern denied

Velasquez's claim, the Credit Union repossessed her cars. The record does not indicate that neither the Credit Union or Velasquez notified American Modern of this event. Nor does it indicate that American Modern was informed of the repossession in some other manner. Velasquez had no contact with American Modern until November 2004.

By its own terms the policy coverage ended when Velasquez's vehicles were repossessed. It states, "[y]our insurance . . . stops on the earliest of the following dates: . . . (8) the date the collateral you pledged to secure debt is repossessed." Neither party in this case disputes that Velasquez's Mitsubishi and Chevy automobiles constituted the collateral. Likewise, neither party disputes that both automobiles were repossessed prior to November 2004. Thus, at the time the vehicles were repossessed, Velasquez's insurance contract with American Modern became inoperative. Any proof sent to American Modern after that date was also inoperative because there was no longer any purpose to the policy. For so long as Velasquez's disability required American Modern to pay, American Modern made payments. After the expiration of her coverage under level one, Velasquez's only option for continued coverage was under level two, which required total disability. Since evidence of total disability was not forthcoming until November 2004, if at all, there was no impediment to ending the insurance contract according to its terms at the moment the collateral was repossessed.

Without a determination of total disability entitling Velasquez to level two coverage at the time of repossession, the policy ended by its own terms. There is no ambiguity in the language of this provision to allow for another interpretation. Simply put, when the collateral was repossessed, there was nothing left to insure and no further obligation on the part of American Modern.

American Modern denied Velasquez's claim for level two benefits in March 2000, after she submitted medical reports indicating she was not totally disabled. American Modern informed her as to what might trigger a reconsideration of her case at a later date. The Credit Union's repossession of Velasquez's cars was an intervening circumstance which occurred after American Modern determined it had no further liability and had been given no information to the contrary. We hold that the policy stopped of its own terms upon repossession of the cars in October 2002.

**2.      Velasquez Did Not Comply With the Policy's Three-year Time to Sue Provision**

Summary judgment was also proper for failure of Velasquez to submit proof of a disibility or sue within the policy's time to sue provision. Three-year time to sue provisions are valid in New Mexico insurance contracts. This position was endorsed in *Willey v. United Mercantile Life Ins. Co.*, 1999-NMCA-137, 128 N.M. 98, 990 P.2d 211, where this Court analyzed a three-year time to sue provision almost identical to the one now before us and held that it was both valid and reasonable. *Id.* ¶ 10.

16

Indeed, because New Mexico's insurance code codifies such language, NMSA 1978, § 59A-22-14 (1984), this Court stated that its appearance in insurance contracts bears "the imprimatur of our Legislature." *Willey*, 1999-NMCA-137, ¶ 11.

The insurance contract between Velasquez and American Modern provides that "legal action may not be started more than 3 years after the proof is filed." Velasquez first filed a claim on the insurance policy on July 26, 1999. Assuming, perhaps most logically, that this first claim is "proof" to which the contract refers, Velasquez's suit would have been barred as of July 26, 2002. Even if we give Velasquez the benefit of the doubt, her claim still fails. Prior to 2004, the last communication between Velasquez and American Modern concerning her ability to work occurred on March 7, 2000 and included a medical evaluation from Velasquez's physician, Dr. Gathings. Dr. Gathings clearly indicated that Velasquez could work, and his comments provided the basis upon which her claim was disallowed. If Velasquez had been unable to work at a later date, she could have submitted more information at that time. Nevertheless, calculating the time to sue provision from March 7, 2000, Velasquez's claim was barred as of March 7, 2003. Because she filed her claim on November 16, 2004, long after the tolling of the time to sue provision, her claim is barred.

Velasquez asserts that her November 15, 2004, letters to American Modern and the Credit Union, together with her November 15, 2004, visit to the Credit Union,

17

constitute "new proof" that functions to re-set the three-year time to sue provision. This argument fails on the facts. American Modern informed Velasquez that it would consider evidence proving an award of Social Security Disability Benefits. More than three years elapsed until this award came through. Still, Velasquez's November 15, 2004 letter, ten months after her notification that benefits were approved, did not mention any disability endorsed by the SSA; it just asserted that she was "totally disabled." Further, as noted below, an ambiguous and conclusory reference such as that, when followed the next day by filing suit for ignoring a fact less than a day old, cannot serve as proper notice upon which American Modern might have a duty to act under the policy. By the time the time to sue provision ran in 2003, there was nothing existing to show a total disability. Mr. Allen's assignment of a duty to investigate assumes that the claim would stay open indefinitely; a proposition we reject. Investigation at the moment the time-to-sue provision ran in March 2003, would have revealed nothing concerning a Social Security award that would not be forthcoming for nearly another year. Considering that since the policy had ended with the repossession of Velasquez's cars, American Modern had no reason in 2004 to investigate her claim.

**3.    Velasquez did not Comply with the Policy's Sixty-day Waiting Period Prior to Suit**

Immediately prior to the three-year time to sue provision in the policy, the

following language appears: "You may not start any legal action until 60 days after you send us proof of your disability." As we stated above, Velasquez visited the Credit Union to demand her file in November 2004. Likewise, she sent letters to both American Modern and the Credit Union on November 15, 2004. Neither letter mentioned the SSA determination of full disability issued to her in January 2004. The very next day, on November 16, 2004, Velasquez filed suit against Defendants. For purposes of discussing this waiting period, it is irrelevant whether her actions were adequate proofs under the policy. What is important is that the waiting period was valid and binding.

The provision limiting Velasquez's right to sue until sixty days after submitting proof of her disability allows the insurance company to investigate her claim, ascertain its merit, and make a decision on whether to settle it or dispute liability in court. Such a provision also serves public policy by encouraging settlements of this type. Velasquez short-circuited that process by sending her letters to American Modern and the Credit Union, and by filing suit against them the very next day.

A requirement in a contract that a party fulfill specific requirements before bringing suit constitutes a condition precedent to successfully bringing that suit. *Rushing v. Lovelace-Bataan Health Program*, 93 N.M. 168, 169, 598 P.2d 211, 212 (1979) (holding that a policy requiring an insured to submit a written claim and

19

exhaust administrative remedies prior to filing suit was enforceable as a condition precedent). When the terms of a contract are clear, courts may not modify the terms and must construe them as written. *Id.* In this case, the sixty-day waiting period was an unambiguous condition precedent with which Velasquez failed to comply.

American Modern's March 2000 letter expressed a willingness to consider a SSA determination of disability. It clearly informed Velasquez of what might be required as proof of disability should she wish to submit such information. However, the policy ended in 2002 with the repossession of the vehicles. Velasquez did not attempt to assert any rights or seek benefits under the policy at that point, or otherwise communicate with American Modern. After January 2004, Velasquez possessed a determination of disability from the SSA but failed to forward it to American Modern. She then sent a letter asserting "total disability" without supporting proof and filed suit the next day. The quality of Velasquez's proof is not important here; her submission of *anything* asserting to be proof triggered the sixty-day waiting period. Thus, the waiting period was properly interposed as a defense to her suit.

**4.      Velasquez Failed to Preserve the Issue of Ambiguity for Appeal**

Velasquez argues that because the insurance contract provides no definition of "proof," we should analyze the contract for ambiguity and construe it against Defendants. We refuse to do so because Velasquez did not properly preserve the

20

issue. In order to "preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct. App. 1987); *In re Doe*, 98 N.M. 540, 541, 650 P.2d 824, 825 (1982) (explaining that an appellate court should not reach issues that the parties have failed to raise); *Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, ¶ 38, 125 N.M. 748, 965 P.2d 332 (holding that preservation serves two purposes: (1) it allows the trial court an opportunity to correct any errors, thereby avoiding the need for appeal; and (2) it creates a record from which the appellate court can make informed decisions).

Velasquez did not properly preserve the issue of contract ambiguity for appeal. In her response to Defendants' motion for summary judgment, she never once asserted that American Modern failed to properly define "proof" in the contract. Likewise, she never mentioned the issue in oral arguments before the district court, and she never directly addressed it in the hearing on her motion for reconsideration. She also never asserted that anything beyond her conclusory statement that she suffered a "total disability" constituted proof under the policy. As a result, the district court never properly ruled on the issue, relying as it did on the three-year time to sue provision as the primary basis for its order.

**CONCLUSION**

21

For the reasons set out above, we hold that the district court's order for summary judgment in favor of Defendants was proper. Viewing the facts in the light most favorable to Velasquez, we find no genuine issues of material fact and affirm the district court's order. Similarly, we find no abuse of discretion on the part of the district court in allowing summary judgment to proceed without additional discovery.

**IT IS SO ORDERED.**

_____

**RODERICK T. KENNEDY, Judge**

**WE CONCUR**:

_____

**JAMES J. WECHSLER, Judge**

_____

**MICHAEL E. VIGIL, Judge**